The People of the State of New York ex rel. Katharine R. Callahan, Respondent, *v.* The Board of Education of the City of New York, Appellant.

1. New York City — Public Schools. The charter provisions relating to public schools in the city of New York make good conduct and good work the basis of tenure as to all teachers holding a permanent license; the object is to get the best work from all such teachers by assuring them of safety and protection, without resort to outside influence, so long as they maintain a high standard of conduct and efficiency, and authorizing their removal if they fall below it.

2. Tenure of Position of Teachers. Section 1117 of the Greater New York charter (L. 1897, ch. 378), providing that "All superintendents, assistants or associate superintendents, and all principals, teachers and other members of the educational staff in the public school system of any part of the city of New York as constituted by this act, shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the various school

**170**   People ex rel. Callahan *v.* Bd. Education.   [Mar.,

Statement of case.   [Vol. 174.

boards, subject to the limitations of this act, and to reassignment or to removal for cause, as may be provided by law," as amended and re-enacted by section 1101 of the revised charter (L. 1901, ch. 466), is not a new enactment, but under section 2 is a continuation of the original section and includes within its terms teachers within the present city of New York, whether appointed before or after it took effect, and they are protected from removal during good behavior and competency.

3. Teachers Cannot Be "Reassigned" Except for Cause. The reassignment of such teachers from a higher to a lower grade is not a mere transfer from one position to another without affecting the grade authorized by sections 1105 and 1110, but is practically a removal from a higher position to a lower, and cannot be made except for cause, viz., "for gross misconduct, insubordination, neglect of duty or general inefficiency." (§ 1114.)

4. Same. A teacher employed in the public schools of the city of New York under a permanent license, appointed after the charter of 1897 took effect, but prior to the enactment of the revised charter, cannot be reassigned to a lower grade at a reduced salary except after a trial upon charges and an opportunity to be heard.

*People ex rel. Callahan* v. *Bd. Education,* 78 App. Div. 501, affirmed.

(Argued February 10, 1903; decided March 17, 1903.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 9, 1903, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to reinstate the relator in the position of teacher in the fourth grammar grade in the public schools of the city of New York.

In her petition for the writ, the relator alleged, among other things, that on the 1st of February, 1898, she "was appointed as a teacher of the Sixth Grammar Grade Mixed in Public School No. 89 of the City of Brooklyn under a permanent appointment," and that at the time she held a certificate entitling her "to a permanent appointment as teacher of any grammar grade in the said city;" that on the 30th of June, 1900, she was transferred to Public School No. 90, and appointed teacher of the fourth grammar grade therein; that her name appeared on the payroll of the school last named for the month of September, 1900, as a teacher of the fourth

grammar grade, and the principal of said school certified to the correctness of the payroll; that the October payroll contained her name as a teacher of the sixth grammar grade, but she declined to sign it; that she was transferred from the fourth grammar grade and appointed in the sixth grammar grade, and that by reason thereof her salary was lowered by at least $156 a year; that no charges were ever preferred against her, no trial had, and none of the requirements of the charter or of the by-laws of the school board of Brooklyn, in relation to the removal of teachers, were complied with.

These allegations were substantially admitted by the defendant, although it denied any knowledge or information sufficient to form a belief as to certain other allegations of the petition which have not been mentioned. It also alleged, in substance, that teachers in the borough of Brooklyn hold their positions during the pleasure of the school board, and that the relator, after assignment to the higher grade, was reassigned to the lower.

The hearing before the Special Term resulted in an order for a peremptory writ of mandamus, requiring the defendant to reinstate the relator in her former position as a teacher of the fourth grammar grade. Upon appeal to the Appellate Division, said order was unanimously affirmed, and the defendant appealed to this court.

*George L. Rives, Corporation Counsel* (*James McKeen* of counsel), for appellant. The power of the school board to appoint carried with it the power to remove. (*People ex rel. v. Lathrop*, 142 N. Y. 113.) The board of education had power to transfer Miss Callahan from the fourth grade to the sixth grade, and to make the various other transfers here complained of. (L. 1901, ch. 466, § 1117.)

*Conrad Saxe Keyes* for respondent. The positions of all teachers, principals and other members of the educational staff in the city of New York are permanent, subject only to removal for cause after a hearing and a trial, which are to be

172    People ex rel. Callahan v. Bd. Education.    [Mar.,

Opinion of the Court, per Vann, J.    [Vol. 174.

conducted in the manner provided for by the provisions of
the charter. (L. 1901, ch. 466, § 1101.) The transfer from
the fourth grade to the sixth grade being actually a lowering
in rank, and causing a reduction in salary, was in effect a
removal from the fourth grade followed by a reappointment
to the sixth grade. It affected a substantial right of the peti-
tioner, and was not such a transfer as is permitted by the
charter. (L. 1901, ch. 466, §§ 1114, 1117; *People ex rel.* v.
*Feitner*, 48 App. Div. 101; *People ex rel.* v. *Welde*, 28 Misc.
Rep. 582.)

Vann, J. The rights of the parties to this proceeding
depend upon the meaning of certain sections of the charter
of the present city of New York, as enacted May 1st, 1897,
to take effect January 1st, 1898. (L. 1897, ch. 378.) In con-
struing a statute, light is generally thrown upon its meaning
by considering any other statute upon the same subject, which
either preceded or followed it. Therefore, as an aid to the
interpretation of the statute directly involved in this litiga-
tion, we will briefly refer to the law as it was before that
statute was passed and to changes since made in the statute
itself.

According to the charters of the cities of New York and
Brooklyn, as they stood just before the act of consolidation
went into effect, the board of education, in each, could remove
teachers arbitrarily and without a trial. While in the city of
New York there was a right to appeal from the board of
school superintendents to the board of education, the school
authorities, as a whole, had absolute control of the subject.
(L. 1896, ch. 387, § 26.) This was also true as to the school
authorities of the city of Brooklyn, except that no provision
existed for an appeal from one branch of the department of
public instruction to another. (L. 1888, ch. 583, tit. 17,
p. 1071.) As the law was, therefore, when the present city
of New York was created, the teachers of the public schools
in New York and Brooklyn, with certain exceptions not now
material, were not protected, in the absence of a contract, in

1903.]   People ex rel. Callahan v. Bd. Education.   **173**

N. Y. Rep.]        Opinion of the Court, per Vann, J.

holding their positions even if they had earned them by many years of faithful and efficient service. They could, one or all, be removed with or without cause, investigation or trial, at the will of the power that appointed them. This is expressly admitted by the appellant.

By the charter of the greater city, however, as originally passed, a change was made in this regard. For the first time the statute authorized charges to be preferred against a teacher, a formal trial had and, in case of conviction, punishment inflicted by a fine, suspension for a fixed time without pay, or dismissal. (L. 1897, ch. 378, § 1114.) Thus instead of the old method of arbitrary removal, there was substituted a method of removal after notice and an opportunity to be heard. This prepares us to search for some express limitation upon the discretionary power which formerly existed, as otherwise a trial upon charges before removal would be useless, for if the board could remove at will, why should they have recourse to a trial? The relator contends that section 1117 has this effect, while the defendant contends that it was enacted for a different purpose. As the decision of this controversy depends upon the construction of that section we quote it in full, although the discussion is substantially confined to the first and last sentences thereof : "§ 1117. All superintendents, assistant or associate superintendents, and all principals, teachers and other members of the educational staff in the public school system of any part of The City of New York as constituted by this act, shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the various school boards, subject to the limitations of this act, and to reassignment or to removal for cause, as may be provided by law. On the first day of February, eighteen hundred and ninety-eight, the city superintendent of schools in the city of New York as constituted prior to the passage of this act, shall be and become the superintendent of schools of the boroughs of Manhattan and The Bronx ; and the assistant superintendents of The City of New York as then consti-

tuted, shall be and become associate superintendents of the boroughs of Manhattan and The Bronx; the superintendent of public instruction of the city of Brooklyn as constituted prior to the passage of this act shall be and become the superintendent of schools of the borough of Brooklyn; and the associate superintendents of the city of Brooklyn as then constituted, shall become associate superintendents of the borough of Brooklyn. The duties of all of these officers on and after February first, eighteen hundred and ninety-eight, shall be entirely defined and limited by the provisions of this act. All persons transferred by this section to the service of the consolidated city who hold office for definite terms, shall be transferred for the remainder of their respective terms only."

This section was in force when the relator was removed from the one grade to the other, and its purpose, according to the contention of the appellants, " was to allay the apprehension that the consolidation, involving the dissolution of former local boards of education, might drop out of employment teachers and other subordinates in the municipal service." While this may have been a part of the purpose, there may have been the further object of permanently protecting teachers in the tenure of their positions unless they were removed for cause after a trial, which, as we have seen, was then authorized for the first time. On the other hand, the relator claims that it was the inauguration of a new policy in this regard and we find some support of her theory in subsequent legislation, which, although not directly affecting this case, may indicate a settled purpose on the part of the legislature.

The greater charter was thoroughly revised by chapter 466 of the Laws of 1901, which took effect on the first of January, 1902. By the revision section 1114 was re-enacted with unimportant changes as section 1093, and section 1117 reappears with some additions as section 1101, which provides that " Except as herein otherwise provided, the city superintendent, the members of the board of examiners, the supervisors, the directors, and all principals, teachers and other

members of the educational staff in the public school system of any part of The City of New York, and all school officers or other employees appointed by the board of education before this act takes effect, including the secretary of the board, the city superintendent of schools, the superintendent of school buildings, the superintendent of school supplies, the auditors, and all deputies, clerks and other employees in their respective offices, shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the lawful authority subject to change of title, to reassignment or to removal for cause, as may be provided by law, and subject to the right of the said board to abolish unnecessary positions."

The distinction appearing in this section between principals, teachers and other members of the educational staff, on the one hand, and school officers and members of the executive and clerical staff on the other, is significant, for all of the former are protected in tenure without reference to the date of their appointment, whether before or after the act took effect, while of the latter only those appointed before the act took effect are thus protected. There is also a distinction in the original section before it was revised as to persons, not teachers " who hold office for definite terms," as they are to continue during " the remainder of their respective terms only." Moreover, while the former power of appointment is preserved in section 1103, neither the charter nor the revision confer the power of removal except for cause. This is tantamount to a prohibition of removals without cause.

When the charter was revised the apprehension that teachers might be dropped out by the effect of consolidation had been removed by lapse of time, and the purpose of the legislature to protect the tenure of teachers by a general provision applying to all is clear and unmistakable, yet the revision was but a re-enactment, with some changes, of the corresponding section in the original charter and a continuation of the new policy established thereby. The act of revision expressly declared that its provisions, " so far as they are substantially

the same as those of laws existing on December thirty-first, 1901, shall be construed as a continuation of said laws, modified or amended according to the language employed in this act, and not as new enactments." (L. 1901, ch. 466, § 2, p. 656.)

The claim that the old section had no prospective effect, but was limited to teachers already appointed, is met by the argument that it is unreasonable to believe that the legislature intended to protect a part of the teachers only and to leave others of the same class unprotected, simply because they were appointed at a later period. Two kinds of tenure for teachers applicable to the same position, in the same city, but founded upon no substantial distinction, would be an anomaly in legislation. It would be without reason or justice, and an unreasonable or an unjust purpose should not be attributed to the legislature unless its language conclusively requires it. (*People ex rel. Beaman* v. *Feitner*, 168 N. Y. 360, 366.)

We agreed with the learned Appellate Division that section 1117, as continued by section 1101 of the revision, was designed to establish the general rule applicable to all teachers, regardless of when they were appointed, that a public school teacher in the greater city should be protected against removal " during good behavior and competency."

It is contended, however, that as the protection afforded by the statute is subject to " reassignment or to removal for cause, as may be provided by law," a teacher promoted to a higher position may be reassigned to the lower in the discretion of the board and without a trial. The word " reassignment " as thus used in close connection with the word " removal," and with no comma intervening, means, as we think, something more than the simple transfer from one school to another without affecting the grade, which is authorized by other sections. (§§ 1105, 1110.) The context indicates a reassignment to a lower position after an appointment to a higher. As promotion vacates the inferior position in order to fill the superior, so reduction in rank vacates the higher by transfer to the lower. Since the same individual cannot fill both positions at

the same time, there is practically a removal from the one and an appointment to the other. Hence, the word "reassignment" was used in collocation with the word "removal" and both were attached to the word "cause," which applies with equal force to each. While "assign" appears in the title relating to public instruction, it is not used in reference to rank or grade, but to the specification of duties. (§§ 1112, 1116.) The word "assignment" does not appear in said title at all, and, hence, "reassignment" was doubtless used with a special meaning to cover such cases of removal and reappointment as the one before us; otherwise doubt might arise as to whether there was a removal, since the teacher still remained in the service. There is, obviously, a distinction between a mere transfer and a reassignment, for a transfer from one school to another is authorized by section 1105 and a transfer from a school in one borough to a school in another by section 1110, but the care taken by the legislature to protect the teacher is noticeable, as the latter transfer can be made only with his consent.

For the cause "provided by law," reference must be had to section 1114, which authorizes charges to be preferred against a teacher "for gross misconduct, insubordination, neglect of duty or general inefficiency." The care taken by the legislature to confine the appointment of teachers to a class of trained and tried applicants is not without bearing upon this branch of the subject. No one can teach without a license. The system of issuing licenses, in addition to the ordinary test by examination as to intellectual qualifications, has a further test dependent upon experience, as a license issued for one year at first, "may be renewed without examination in case the work of the holder is satisfactory to the borough superintendent for two successive years. At the close of the third year of continuous, successful service, the city superintendent may make the license permanent." (§ 1081.) Thus the department, by simply refusing to grant a permanent license after a teacher has been tested by an experience of three years, may drop him from the rolls if he proves unsatis-

factory.   If, however, after passing through the probationary period a permanent license is issued, the statute attaches to an appointment permanency of tenure.

In rare instances, even after all these precautions are taken, a teacher may turn out immoral, insubordinate, negligent or inefficient, and, hence, provision is made for removal upon those grounds after a hearing.   The same teacher may be efficient in a low grade, where young pupils are taught, and generally inefficient in a higher grade for older and more advanced scholars, especially if government and discipline, involving the exercise of executive ability, are required. While the interests of the schools, which is supreme, may require the reassignment of a teacher promoted to a higher grade, as we read the statute, the reassignment must be founded on cause shown after an opportunity to be heard. Some fact must be alleged and proved to justify it, or the scheme to protect the tenure of teachers can be defeated, in all cases of promotion, by arbitrary reassignment to the former position.   If this can be done without a hearing, it may be done after the lapse of a long time and for personal or political reasons to the manifest detriment of the schools. The statute makes good conduct and good work the basis of tenure as to all teachers holding a permanent license, unless those promoted are excepted by the use of the word " reassignment."   We think it was not intended to have this effect, and that the purpose of section 1117 was to get the best work from all teachers by assuring them of safety and protection, without resort to outside influence, so long as they maintain a high standard of conduct and efficiency, and authorizing their removal if they fall below it.   This construction is in harmony with the theory of appointment under the rules of the civil service and of promotion for merit, provided by other sections of the statute.   (§§ 1075, 1081, 1106, 1110.)

The relator had a permanent license to teach in any grammar grade.   She was appointed to the sixth grade, and after teaching there for over two years she was duly promoted to the fourth, to which a higher salary was attached.   She accepted

the position and was entitled to hold it permanently, unless she was removed for cause, after an opportunity to be heard. She was removed without cause or hearing and reassigned to the sixth grade at her old salary.  The defendant, in good faith and through a misconception of the statute, thus exercised a power which it did not possess, and the action of the courts below in restoring the relator to the fourth grade was proper and should be sustained.

The order appealed from should be affirmed, with costs.

PARKER, Ch. J., HAIGHT, MARTIN and WERNER, JJ., concur; GRAY and O'BRIEN, JJ., not voting.

Order affirmed.