(51 Misc. Rep. 295.)

BUCKBEE v. BOARD OF EDUCATION OF CITY OF NEW YORK.*

(Supreme Court, Special Term, New York County.   July, 1906.)

SCHOOLS AND SCHOOL DISTRICTS—COMPENSATION OF TEACHERS.

Under Greater New York Charter, §§ 1091, 1117, as amended in April, 1899, by Laws 1899, pp. 883, 1415, cc. 417, 644, conferring on the school board the power to fix salaries of principals under certain rules, the board of education may advance salaries of principals of public schools; but, having so advanced them, it cannot afterwards reduce them, and the principals are entitled to such advanced salaries subject to reassignment or removal for cause.

Action by Sarah E. Buckbee against the board of education of the city of New York.   Demurrer to answer sustained.

John T. Smith, for plaintiff.

John J. Delany, Corp. Counsel, and Stephen O'Brien, Asst. Corp. Counsel, for defendant.

GREENBAUM, J.   The sufficiency of the defenses to which plaintiff has demurred must be determined by certain provisions of the New York charter as it stood on May 17, 1899, and significantly sections 1091 and 1117 thereof.   Laws 1899, pp. 883, 1415, cc. 417, 644. It may be stated at the outset that the infelicity of phraseology in the statute to be construed, by reason of its lack of precision and of the employment of certain apparently cautionary phrases, affords opportunity to each disputant to argue that, if the Legislature intended what the opposing side claims, it would or would not have used certain language, according as the argument helps the one or the other side. It is therefore clear that, while there is apparently more or less force in some of the points urged by each of the parties, the true interpreter may go astray if he lay undue importance upon certain expressions or words, which were evidently employed in an excess of caution, and· which for that very reason permits the building up of an argument

*Reversed on appeal, see 100 N. Y. Supp. 943.

that the framers of the law may never have contemplated. The proper rule of construction is to harmonize all the various sections of the act bearing upon the question, in the spirit of the legislation involved, with the view of gathering the true legislative intent.

The plaintiff and her assignors, concededly all women principals, were employés of the defendant under an employment which was contractual, and which "was subject to no other limit of time than the power of removal for cause." Steinson v. Board of Education, 165 N. Y. 431, 59 N. E. 300. The element of the term of the contract is therefore clear. It is only necessary here to ascertain what the contract is, so far as it relates to compensation; the specific question involved upon this argument being: Had the board of education the power to reduce the salaries of the plaintiff and her assignors?

Sections 1091 and 1117, as amended in April, 1899 (Laws 1899, pp. 883, 1415, cc. 417, 644), largely control the determination of the question. Section 1091 confers upon the school board the power of fixing the salaries of the principals, but requires that:

"Such salaries shall be regulated by merit, by the grade of class taught, by the length of service, or by the experience in teaching of the incumbent in charge or by such a combination of these considerations as the school board may deem proper."

It further provides that:

"Said salaries need not be uniform throughout the several boroughs, nor in any two of them, nor throughout any one borough. The salaries fixed and established and duly payable in the different schools of the territory hereby consolidated, as these salaries were on the 1st day of January, 1898, shall be and remain the salaries in the schools of the several boroughs hereby constituted until the same shall be changed or modified, as provided for in this section."

The remaining portion of the section fixes the minimum of salaries in the various grades of the teaching staff at varying periods of service, and provides that:

"No salary now paid to any public school teacher in the city of New York shall be reduced by the operation of this act."

Section 1117, as amended in April, 1899, provided that:

"All principals * * * shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the various school boards, subject to the limitations of this act and to reassignment or to removal for cause, as may be provided by law."

The scheme of the Legislature ostensibly was to provide a method for fixing the salary of teachers in which merit, grade of class taught, and length of service were to be considered by the school board, subject, of course, to the provisions as to minimum salary. It would seem that such a plan would necessarily preclude the idea of uniformity of salary, and apparently to emphasize the fact it is enacted that "salaries need not be uniform," from which it might be argued that they may be uniform if the board deemed it proper. In passing it may be observed that, if they were made uniform, the spirit of the act which requires the board to consider merit, length of service, and the like would be nullified. This is an illustration of the infelicity of the lan-

guage of the act. The fixedness of the salaries seems to be one of the controlling purposes of the act, for it provides that the "salaries fixed or established" on January 1, 1898, shall so remain until the same shall be changed or modified, as provided for in this section (that is, section 1091); the meaning being that the salaries may be subject to increase, "as provided for" in that section, whereupon they shall be "fixed and established" as thus increased.

But, says the defendant, this section also provides, "no salary now paid to any public school teacher in New York shall be reduced by the operation of the act," and, if it were intended to forbid the reduction of salaries established in the future, why was it not so stated? This, again, is an illustration of the use of words of overcaution. It was obviously intended by these words to make it clear that, if any school teacher at the time of the enactment received more than the minimum therein provided, it was not to be construed as giving power to the board to reduce. It seems to me that the previous phraseology of the act sufficiently expressed the idea that salaries may not be reduced. Turning to section 1117, we find confirmation of this view in the provision that the teaching staff "shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided, subject to the limitations of this act," etc. What purpose was there in referring to the "compensation as is now provided or may be hereafter provided, subject to the limitations of this act," unless it meant to emphasize that, not only shall the tenure of office be secured, but that the compensation of the teacher shall not injuriously be affected; that is, reduced during such tenure? The words "or may hereafter be provided," followed as they are by the words "subject to the limitations of this act," were evidently intended to mean that whatever changes in salaries may be thereafter made shall be made subject only to said limitations, but, when made, the teachers would thereafter be entitled to such compensation.

One of the pervading purposes of the act seems to be to safeguard the rights of the teachers in their tenure of office and their compensation, and the method by which the wording of the Legislature sought to accomplish the result is expressed in People ex rel. Callahan v. Board of Education, 174 N. Y. 169–178, 66 N. E. 674, 677, as follows:

"We think * * * that the purpose of section 1117 was to get the best work from all teachers by assuring them of safety and protection, without resort to outside influence, so long as they maintain a high standard of conduct and efficiency, and authorizing their removal if they fall below it. This construction is in harmony with the theory of appointment under the rules of the civil service and of promotion for merit, provided by other sections of the statutes. Laws 1897, pp. 386, 388, 400, 401, c. 378, §§ 1075, 1081, 1106, 1110."

It must be presumed that, when the board advanced the salaries of the plaintiff and her assignors, it was honestly influenced by considerations of merit and experience of these principals. The board was not obliged to make uniform increases, but, if it did so, the presumption above expressed would nevertheless exist. To hold otherwise would be to permit the board to increase salaries, whether uniformly or not, as it saw fit, and thereafter, capriciously or arbitrarily, to reduce one or more,

as its mood, whim, or purposes would prompt. Such action would come directly within the condemnation of the principles announced in the Callahan Case, supra.

The demurrer must be sustained, with costs to defendant.