(59 Misc. Rep. 605.)

### WOOD v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Trial Term, Queens County.  June, 1908.)

1. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—"VICE PRINCIPAL"—"FIRST ASSISTANT."

One who entered into a contract with the board of education to render such services as teacher as would be required of him for a certain time was not a "vice principal" or "first assistant," within Laws 1900, p. 1605, c. 751, and entitled to the compensation provided by that law.

2. SAME—PERMANENCY OF POSITION.

    Greater New York Charter (Laws 1897, p. 404, c. 378) § 1117, making positions of teachers permanent, subject to certain limitations, is not applicable to a teacher in the village of Flushing, whose license expired within the current year, except for the period limited by the expiration of the license.

3. SAME—APPOINTMENT AS VICE PRINCIPAL.

    Where the school board of the borough of Queens appointed one as vice principal, subject to his thereafter receiving a license, such appointment was also subject to the limitation of the by-laws of the board of education of the city of New York that no one who does not at the time hold a first assistant teacher's license shall be appointed assistant principal.

Action by Howard R. Wood against the Board of Education of the city of New York to recover for services as teacher. Judgment for defendant.

Collins, Wells & Hughes, for plaintiff.

Francis K. Pendleton, Corp. Counsel (Stephen O'Brien, of counsel), for defendant.

BLACKMAR, J. School district No. 5 in the town of Flushing, county of Queens, was established as a permanent school district by special act (chapter 81, p. 87, of the Laws of 1848). This act, although amended several times, had not been repealed at the time of the creation of the city of Greater New York. The act created a board of education for the district, and provided, among other things, that the said board should "have and possess all the rights, powers, and authority of town superintendent of common schools within said district." The town superintendent of common schools within said district then had power to ascertain the qualifications of candidates for the position of teacher and to grant certificates in such form as should be prescribed by the superintendent. Rev. St. 1846 (3d Ed.) pt. 1, c. 15, tit. 2, art. 4, §§ 66, 67, 68. It therefore follows that the board of education of school district No. 5 had power to license teachers within said district. The Flushing High School was established by the said board of education of school district No. 5. See Laws 1875, p. 333, c. 346.

On the 25th day of May, 1897, the plaintiff made a contract with said board of education of the village of Flushing to render such service in the capacity of teacher, in the schools of said village, as should be required of him by the board of education or the superintendent of schools in said village during the school year 1897 and 1898. The term of employment expired on the last Friday of June, 1898. The contract was made subject to the manual of the board of education, which provided, among other things, that the teachers should hold their office during the school year for which they were appointed, unless sooner removed for cause. Plaintiff gave evidence tending to show that he was assigned by the superintendent of schools of said district to the duty of teaching classes in the high school and also was instructed to assist the principal in the performance of his duties. The territory embraced in this school district afterward became a part of the city of Greater New York, by act of the Legislature tak-

ing effect January 1, 1898 (3 Laws 1897, p. 404, c. 378, § 1117), and this date found plaintiff in the performance of his duties under the contract above referred to.

It is the claim of the plaintiff that by the terms of the charter of the city of Greater New York he was continued permanently in the position he occupied on January 1, 1898, subject only to removal for cause; that he continued to perform such duties; that they were such duties as were performed by a vice principal or assistant principal as that grade was subsequently established; and that under the terms of the Davis law (Laws 1900, p. 1605, c. 751) he is entitled to the compensation provided by that law. The plaintiff also claims that he was appointed vice principal on June 30, 1898, under a license granted by the city superintendent on that date and made permanent on June 30, 1901, and that the charter protects him in this position and entitles him to the compensation fixed by the Davis law.

It is contended by the defendant that the license under which plaintiff was performing his duties at the time of consolidation expired in 1898; that the provisions of the charter of Greater New York continued his employment only until such date; that the performance of his duties since that time was pursuant to an appointment made on June 30, 1898, under a yearly license issued by the superintendent of schools, which was continued and made permanent on the 30th day of June, 1901; that such position, although designated in the resolution of appointment as vice principal, was made subject to the proper license being obtained; that the only license obtained was that of assistant teacher; and, therefore, that he was entitled only to the pay fixed for such grade, which he has been concededly receiving. It is also claimed by the defendant that the position held by the plaintiff on the 1st day of January, 1898, was not that of first assistant, or vice principal, or assistant principal, and that he has never occupied such position.

There are three questions presented for consideration by this record: (1) Was the plaintiff, on January 1, 1898, occupying the position subsequently defined by the Davis law as "vice principal" or "first assistant"? (2) Was the effect of · section 1117 of the charter of Greater New York (Laws 1897, p. 404, c. 378) to continue him permanently in that position? (3) Was he appointed vice principal on June 30, 1898, under a license which made the position permanent? These questions will be considered separately.

1. It was held in the case of Moore v. Board of Education, 121 App. Div. 862, 106 N. Y. Supp. 983, that the rights of the plaintiff under the Davis law were determined by the character and nature of the employment at the time of consolidation. In that case the plaintiff had been for eight years a female teacher of the girls' graduating class in the former county of Richmond, and continued in that employment after consolidation. As the Davis law provided that no female teacher of a girls' graduating class should, after ten years of service, receive less than $1,440 per annum, it was held that she was entitled to that rate of compensation, although, after the charter of Greater New York went into effect, her class was so changed that, in addition to teaching

scholars about to graduate, she was called upon to teach others not so far advanced. It was also held unimportant that the place she held at the time the charter went into effect was not designated in terms as a "position" in any act or by-law. The position of "teacher of the girls' graduating class" is one easily defined. The position of first assistant or vice principal is different. It is not a well-defined position, like that of principal, or teacher of any particular grade or class. The duties performed by a vice principal, so far as that position is recognized in the schools of Greater New York, are such as the principal may from time to time call upon any of the teachers to perform; and the fact that it was the custom, when occasion required, to call upon any particular teacher to perform these duties, is not, it seems to me, sufficient to define his position as that of vice principal or first assistant. The plaintiff in this case was employed to render "such service in the capacity of teacher as may be required of him." He was engaged primarily in instructing. The exact nature of the duties, other than teaching, which he was performing on the 1st day of January, 1898, is not definitely disclosed by the evidence; and although at times he assembled the school at the morning session and at the beginning of the afternoon session, dismissed the school at the end of the session, made out reports when required so to do, and received pupils sent by other teachers under penalty of discipline, yet he was at the same time engaged in teaching classes, and I therefore cannot make a finding that the duties which he was performing were those of a first assistant or vice principal as those duties were subsequently defined.

2. The contract of May 25, 1897, between the plaintiff and the board of education of the village of Flushing, was equivalent to a license to teach in such village. The plaintiff also had a license, dated September 1, 1897, issued by the state superintendent, to teach in school district No. 5 for six months from the date of the license and no longer. It therefore appears that plaintiff's license to teach expired, at the latest, on the last Friday in June, 1898. The question is therefore presented whether the charter of Greater New York continued him permanently in the position which he occupied at the time it went into effect. Section 1117 of the charter of 1897 reads as follows:

"All superintendents, assistant or associate superintendents, and all principals, teachers and other members of the educational staff in the public school system of any part of the city of New York, as constituted by this act, shall continue to hold their respective positions and to be entitled to such compensation as is now provided or may hereafter be provided by the various school boards, subject to the limitations of this act, and to reassignment or to removal for cause, as may be provided by law."

The effect of this section was considered in the Callahan Case, 174 N. Y. 169, 66 N. E. 674. That case held that the effect of this provision of the charter was to continue as permanent the tenure of all teachers as such tenure existed on the 1st day of January, 1898, and also to continue as permanent any positions attained by them by subsequent appointment or promotion. As, however, it is expressly stated in that case that at the time of the consolidation the plaintiff held a certificate entitling her to permanent appointment as teacher in any

school grade in the said city, and as this is'not the situation of the plaintiff in this case, the precise point now before the court was not there decided. Neither was the point decided ·in the Moore Case; for there, as in the Callahan Case, the plaintiff held a certificate or license entitling her to a permanent appointment. It is pointed out in the Callahan Case that the tenure of a teacher appointed after consolidation is determined by section 1081 of the charter (Laws 1897, p. 388, c. 378), which provides that no person shall teach in any public school in the city who has not such a license as is required by such section. The licenses there provided for are granted for the term of one year, and may be renewed for two successive years. Thereafter the superintendent of schools may make such licenses permanent. If such license is not made permanent, the tenure of office of the teacher ceases. If made permanent, the tenure of office also becomes permanent, and the teacher can only be removed for cause. This provision of the charter does not apply to teachers who were occupying positions in any of the districts now comprising the city of Greater New York on the 1st day of January, 1898; but it illustrates the policy of the law that a permanent license is a condition to a permanent position.

The contention of the defendant is that the effect of this section is to continue the position of the teacher only during the life of his license. The claim of the defendant seems to be upheld in the case of Cleveland v. Board of Education, decided by Justice Jaycox, and affirmed in 119 App. Div. 878, 103 N. Y. Supp. 1119. It has for a long time been the policy of the law that the qualifications for employment as teachers should depend on licenses or certificates granted by some constituted authority. Such licenses might be permanent or temporary; and it would seen to be the better opinion that full effect may be given to the legislative intent by holding that section 1117 of the charter of Greater New York was not intended to change this well-settled rule, but was effective only to continue the position of the teacher during the life of the license. Section 1086 of the charter, which must be read in connection with section 1117, expressly provides that all yearly school contracts made by local school boards, whose territory was included in that of Greater New York by the charter of 1897, shall in all respects continue until the expiration of the yearly term. If this section is read as a proviso to section 1117, its meaning would be clear. In my opinion, it might well be given this effect. See, also, People ex rel. Finigan v. Board of Education, 106 App. Div. 101, 94 N. Y. Supp. 61.

3. The plaintiff contends, however, that, if he cannot recover on the ground of his continuance in the position of vice principal or first assistant by the charter of Greater New York, he may by virtue of his subsequent appointment. At a meeting of the school board of the borough of Queens, held June 30, 1898, a certain report and resolution was received and adopted. The report recommended that certain teachers be appointed from September 1, 1898, to teach in the schools indicated, subject, however, to their receiving licenses from the city superintendent. The resolution in terms appointed the plaintiff a vice principal to school No. 20. A member of the board moved that

the report and resolution be received and adopted, and the motion was carried. In my opinion, therefore, the words in the report, "subject, however, to their receiving licenses from the city superintendent," became a condition to the validity of the appointment under the resolution. On the 9th day of May, 1898, the board of education of the city of New York adopted certain by-laws. Among others was one which read:

"No one shall be appointed or promoted to the position of head of department or assistant principal in a high school who does not hold a first assistant teacher's license or a principal's license for high schools."

There is also in evidence an extract from the minimum requirements adopted May 9, 1898, for all persons appointed to any supervising or teaching position under any of the school boards. This provides that certain licenses shall be issued in the city of New York. For high schools the schedules of licenses were as follows: (1) Substitute teacher. (2) Assistant teacher. (3) First assistant teacher, head of department, or assistant principal. (4) Principal. It therefore appears that, by the by-laws of the board of education, no one could be appointed to the position of head of department or assistant principal who did not hold at least a first assistant teacher's license. The appointment of the plaintiff, on June 30, 1898, was therefore subject to this requirement. On the 30th day of June, 1898, the plaintiff received a license, signed by the city superintendent, to act as assistant teacher to teach science in the high school in the borough of Queens for a period of one year from the date of appointment. This license was renewed on the 30th day of June, 1899; and although there is no evidence of renewal on the 30th day of June, 1900, yet on June 30, 1901, the license was made permanent. The only license obtained by plaintiff was, therefore, that of assistant teacher, which did not qualify him to occupy the position of vice principal, or first assistant, or assistant to principal, all of which designations seem to be used indifferently in describing the position which the plaintiff claims to occupy. The plaintiff was already on the pay rolls as an assistant teacher, and has received the pay of an assistant teacher up to the time of the beginning of this action. The by-laws quoted are not inconsistent with, but are supplementary to, the provisions of the charter; and I entertain no doubt that they are valid and apply to the case of the plaintiff. It follows, therefore, that the plaintiff did not receive a valid appointment as vice principal on June 30, 1898.

Judgment for the defendant on the merits.