SMITH, APPELLANT, v. SCHOOL DISTRICT NO. 18, PONDERA COUNTY, RESPONDENT.

(No. 8362.)

(Submitted April 29, 1943. Decided July 2, 1943.)

[139 Pac. (2d) 518.]

See 23 Cal. Jur. 127; 24 R. C. L. 613.

104

*Messrs. Swanberg & Swanberg,* for Appellant,

106

*Mr. D. W. Doyle,* for Respondent,

MR. JUSTICE ADAIR delivered the opinion of the court.

This is an appeal from a judgment. Charging that respondent had wrongfully prevented him from occupying the position as teacher in the Valier public school to which he had been re-elected, appellant sued for loss of salary.

The appellant Joseph R. Smith taught the sixth, seventh and eighth grades in the public school in the town of Valier, Montana, for the seventh consecutive year. For six of such years, he also instructed the school band.

On April 12, 1939, after almost five years of uninterrupted service, appellant entered into a formal written contract with the Board of Trustees of the respondent, School District No. 18, of Pondera County, Montana, wherein is situate the public school of Valier. In this contract, appellant agreed "to teach in said school district for the period of 9 months, commencing on the 2nd day of September, 1939" at the salary of $1,305 payable $145 monthly.

Pursuant to such contract appellant continued, as theretofore, to teach the sixth, seventh and eighth grades and to instruct the band in the public school in the town of Valier. Before the expiration of the 9-month period mentioned in the contract and prior to the first day of May, 1940, the board of trustees of the respondent district, by letter, notified appellant that he had been re-elected for the ensuing school year at the same salary.

Pursuant to such letter, and without any formal contract, appellant continued to teach the upper grades and the band in the Valier public school for the school year of 1940-41.

Sometime prior to April 28, 1941, J. A. Tidyman, chairman of the board of trustees of the respondent district, without appellant's knowledge, talked with Mr. Arnst, chairman of the Fort Benton School Board, about placing appellant in a teaching position in the Fort Benton school for the ensuing year.

Thereafter and on either the 28th or 30th of April, 1941, Mr. Tidyman in conversation with appellant *orally* informed appellant that the board of trustees of the respondent district had decided not to re-employ appellant. Respecting this conversa-

tion, Mr. Tidyman testified: "I told him that the Board of Trustees had decided not to renew that year's contract. I thought there was a vacant position that he could get at Fort Benton. I offered to do anything in my power to assist him in procuring it. I had already taken the matter up with Mr. Arnst, chairman of the Fort Benton school board."

The Teacher Tenure Act (sec. 1075, Revised Codes of Montana, 1935) provides: "After the election of any teacher or principal for the third consecutive year in any school district in the state, such teacher or principal so elected *shall be deemed re-elected from year to year thereafter at the same salary* unless the board of trustees shall by majority vote of its members on or before the first day of May give *notice in writing* to said teacher or principal that he has been re-elected or that his services will not be required for the ensuing year * * *."

Of course, Mr. Tidyman's conversation with appellant did not comply with the mandate of the above statute. No minutes nor records of any of the proceedings of the board of trustees were either offered or introduced in evidence herein and it is undisputed that the board never, at any time, gave appellant any notice in writing.

Nothing came of the teaching position at Fort Benton about which Mr. Tidyman had talked although appellant interviewed the board of trustees at Fort Benton on May 12th and would have accepted the position there had it been available. The Fort Benton school board had the matter under consideration for a month, at the end of which time appellant was advised that there would be no vacancy to fill.

The board of trustees of the respondent district had agreed to appropriate and contribute the sum of $150 toward the operating expenses of the school band during the summer of 1941. Before delivering this money to the treasurer of the band and as a condition precedent Mr. Tidyman, chairman of the board, in July, 1941, sought to compel appellant to execute and deliver to him appellant's written resignation. This appellant declined to do.

Under date of August 13, 1941, being but a couple of weeks

before the beginning of the school term, M. A. Lund, superintendent of the respondent district wrote appellant: "Your assignment for the school year 1941-42 if you remain in the employ of School District No. 18 will be as teacher in the Bullhead School."

Appellant declined to accept the assignment to teach the Bullhead School and promptly notified the board of trustees that he was "not qualified either by training or experience to teach an ungraded school in which there are lower grade pupils." Appellant also demanded that he be continued in the position he had held in the respondent district in the past.

The Bullhead school is about ten miles from the town of Valier. It is the one and only rural school in the respondent district. When school resumed in the fall of 1941 there were but five pupils in the school. At the time of the trial, the enrollment had reached a total of seven pupils of whom two were in the first grade, one in the second grade, one in the fifth grade, one in the sixth grade and two in the seventh grade.

Appellant owned no automobile. He had no means of transportation between his home and the Bullhead school. There were no accommodations at such school for appellant's family as the teacherage was but a one-room affair wholly inadequate and unsuitable to accommodate appellant's family consisting of his wife, his mother, and his three minor children all dependent upon him for their support and all residing with him in the town of Valier.

At no time during his teaching career had appellant taught any grades below the fifth. Appellant's courses of study and training at the State Normal College had all been to train and equip him for an educator in the upper grades and his entire experience had been in and with the upper grades. At the Bullhead school there would be no band to instruct.

Clearly under such circumstances neither the superintendent nor the board of trustees possessed any statutory right to assign appellant to a position for which he was not qualified. (*In re Womer (Appeal of Osceola Borough School District)*, 337 Pa. 349, 11 Atl. (2d) 146.) Appellant was within his rights in de-

clining the new offer so made him. (*Williams* v. *School District No. 189*, 104 Wash. 659, 177 Pac. 635; *Jackson* v. *Independent School District of Steamboat Rock*, 110 Iowa 313, 81 N. W. 596.)

The letter of August 13, 1941, assigning appellant to teach the Bullhead school, came at such a late date that appellant was wholly unable to obtain another suitable teaching position for the school year which was then but about two weeks away.

At the beginning of the school year on September 2, 1941, appellant presented himself for duty at the public school in Valier. Another teacher had been employed to take appellant's old position and appellant's offer to resume his duties at such school was rejected. Again on September 26th and October 24th, appellant returned to the public school in Valier and offered his services as a teacher therein but his offers were rejected. Appellant made demand upon the respondent district for the payment of his monthly salary and demand being refused on November 22, 1941, he commenced this suit to recover from the respondent district his salary of $1,305 less such sums as he would earn between September 2, 1941, and the close of the school year in 1942. On January 19th, appellant obtained a position as teacher at Basin, Montana, at $120 per month and at the opening of the trial he voluntarily reduced his demand against respondent to $706.50, having credited on the demand such sums as he had earned subsequent to September 2, 1941, and such amounts as he contemplated he would receive for teaching at Basin.

The respondent as defenses to the action, alleged: (1) That it had a right to assign appellant to teach the Bullhead ungraded country school because appellant was the holder of an elementary state teaching certificate which states that he is authorized to teach grades one to nine; (2) that had appellant been more diligent he could have obtained another teacher's position in another district, and (3) that appellant waived the mandate of section 1075, Revised Codes, requiring that the board by a majority vote of its members shall "on or before the first day of May give notice in writing to said teacher."

We find no evidence of any lack of diligence on the part of

appellant in his efforts to obtain another teaching position. The record indicates that appellant did his utmost to find other employment. We likewise find no evidence of any conduct on the part of appellant that amounts to a waiver of any of the provisions of the Teacher Tenure Act. (Sec. 1075, Rev. Codes.)

Irrespective of the wording of appellant's elementary state teaching certificate, the evidence clearly shows that appellant had had no training nor experience in teaching any of the grades below the fifth; he so testified and the record clearly establishes that he was not qualified to teach the Bullhead school.

In *State* v. *Board of Education of City of Duluth*, Minn. 1943, 7 N. W. (2d) 544, 561, the court said: "A holding that a teacher tenure position extended to and included the right to teach any subject, major or minor, for which he held a certificate, regardless of whether he was employed or assigned to teach such subject, and that such right was equal to that of another teacher specially qualified to teach a subject and employed for that reason might be a 'consummation devoutly to be wished' by the teaching profession, but certainly not by a board desiring to improve the educational standards of its schools. It would complicate rather than simplify the administration of the schools, and this to their definite disadvantage. The statutes referred to merely fix the qualifications for teaching 'positions' and do not make a teacher's 'qualifications' and his 'position' coextensive. * * * One of the approved definitions of 'position' is 'relative place, situation, or standing; specif., * * * official rank or status.' (Webster's New International Dictionary, 2 Ed., 1938.) Common synonyms are: 'Place, situation, billet, post, berth; spec. office, bed, incumbency, dignity, intendency * * * portfolio * * * professorship, * * * etc.' (Allen, Synonyms and Antonyms.) Webster's definition fits the Tenure Act well. * * * That teachers in the primary, intermediate, and grammar grades respectively occupy separate and distinct positions in the school system should be self-evident, notwithstanding all grades below high school are, for convenience, grouped into one elementary division. Teachers who are efficient kindergarten or primary teachers and hired for

that purpose and assigned to that work may generally be in-
efficient in the intermediate or grammar grades, where older
pupils are taught, and vice versa. (See *People ex rel. Callahan*
v. *Board of Education,* 174 N. Y. 169, 66 N. E. 674)''.

In *State ex rel. Bass* v. *Vernon Parish School Board,* La. App.
1940, 194 So. 74, 76, the court said: ''To hold that the Tenure
Act merely guaranteed employment in the teaching profession
in the parish would mean, not only that a teacher could be re-
duced in salary at will by the school board, even from the highest
to the lowest salaried position, but also that a teacher could by
arbitrary action of the school board be changed from teaching
a subject or subjects in which he had specialized for years to the
teaching of some entirely unrelated subject or subjects in which
he might not even be qualified; and his removal from office could
thus be effected indirectly when it admittedly could not be effect-
ed directly.''

In 1934, the board of trustees elected appellant to the position
of teacher of the upper grades in the public school in the town
of Valier. Appellant performed his duties as such teacher in the
Valier public school and annually thereafter in 1935, 1936, 1937,
1938 and 1939 he was *re-elected* to this same position as teacher
of the upper grades in the public school in Valier.

The board of trustees was not required to thus *re-elect* ap-
pellant each year. At any time, on or before the first day of
May in any year, the board could ''by majority vote of its mem-
bers * * * give notice in writing to said teacher * * * that his
services will not be required for the ensuing year''; (sec. 1075,
Rev. Codes) and such action on the part of the board would have
effectively prevented the return and re-election of appellant for
the ensuing year.

When a board of trustees desires to retain for another year a
teacher who has already held a teaching position for the third
consecutive year or more, three courses are open to it. These
are:

First, by resolution agreed to by a majority of the trustees at
a meeting regular or special the employment may be authorized

and a formal written contract in duplicate may be executed by the chairman and clerk of the board for the district and by the teacher as provided for in subdivision 2 of section 1015, Revised Codes of Montana. This is the course followed by the board, when, under date of April 12, 1939, it entered into the formal written contract with appellant for the period of nine months commencing on the 2nd day of September, 1939;

Second, the board may, "by majority vote of its members on or before the first day of May give notice in writing to said teacher * * * that he has been re-elected" as provided for in section 1075, Revised Codes of Montana. This is the course followed by the board when it sent the letter to appellant prior to the first of May, 1940, notifying him of his re-election for the school year of 1940-41;

Third, the re-election of the teacher who has taught for the third consecutive year or more may be accomplished simply by the non-action of the board under section 1075, Revised Codes of Montana. In the event the board takes no action, i.e., when it fails to enter into a new written contract with the teacher under section 1015, Revised Codes, and when it fails, by majority vote of its members, to give notice in writing on or before the first day of May that the teacher "has been re-elected or that his services will not be required for the ensuing year," under section 1075, then the law steps in and supplies the necessary action by saying to all concerned that "such teacher * * * shall be deemed re-elected * * * at the same salary." This is precisely what occurred in the instant case and resulted in the retention of appellant in his old position for the school year commencing in the fall of 1941 and ending in the spring of 1942. After the election of appellant to the position of teacher of the upper grades in the public school of Valier for the seventh consecutive year and the failure of the board of trustees to perform its statutory duty with respect to giving him a notice in writing, then did the Teacher Tenure Act (sec. 1075) cast its protecting mantle about appellant's shoulders and prevent the board from evading its responsibility and prevent the district from evading its liability to appellant.

The purpose of enacting the Teacher Tenure Act (sec. 1075) is not merely to insure teaching employment but it is also to insure to teachers who have held teaching positions for three or more consecutive years, security in the position, the grade or the status which they have thus attained.

In the instant case the position which appellant had held teaching the upper grades in the Valier public school had been given to someone else. The new position offered appellant was a demotion. It would remove appellant from the town of Valier and place him ten miles out in the country. It would remove him from his old position as band instructor. It would remove him from his old position, rank, grade and status of a teacher of the upper grades in a town school and would reduce him to the status of a teacher in an ungraded country school teaching all grades from the primary up. To thus demote a teacher requires the same procedure as removal or dismissal. (*State ex rel. Bass* v. *Vernon Parish School Board,* supra.)

While a regularly employed teacher may be discharged for a good and sufficient cause yet "the board has no power to * * * transfer a teacher from a higher to a lower grade. Assigning a teacher to a lower grade is a 'removal,' and just as much so as a dismissal would be." (Voorhies, The Law of Public Schools, Chap. V, sec. 69, at page 160.)

"It is a fundamental rule that in the construction of contracts the courts may look not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made." (*Merriam* v. *United States,* 107 U. S. 437, 441, 2 S. Ct. 536, 540, 27 L. Ed. 531, 533.)

"To ascertain the intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view. The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have." (1 Beach on Modern Law of Contracts, sec. 702.)

The last formal written contract entered into by appellant and the board became effective September 2, 1939, and expired nine months thereafter. This contract, during its entire existence, was interpreted by both contracting parties to authorize appellant to occupy the position of instructor of the band and teacher of the upper grades in the public school in the town of Valier. By their course of conduct did the contracting parties establish a practical interpretation of the contract. Such interpretation is entitled to great, if not controlling, influence in ascertaining what appellant and the board understood by the terms thereof. "It is to be assumed that parties to a contract know best what was meant by its terms and are the least likely to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights; and *that whatever is done by the parties during the period of performance of the contract is done under its terms as they understood and intended it should be.* Parties are far less likely to have been mistaken as to the meaning of their contract during the period when they are in harmony and practical interpretation reflects that meaning than when subsequent differences have impelled them to resort to law and one of them then seeks an interpretation at variance with their practical interpretation of its provisions." (12 Am. Jur. sec. 249, p. 789; *Cook-Reynolds Co.* v. *Beyer,* 107 Mont. 1, 79 Pac. (2d) 658.)

The record wholly fails to show any meeting of the minds at any time on the proposition of teaching the Bullhead school. The expired contract was never treated by either the appellant or the board as being a contract to teach the Bullhead school. So long as such contract remained alive, appellant was at no time requested nor required thereunder to teach the Bullhead school.

When the contract expired and the law stepped in and said that appellant "shall be deemed re-elected * * * at the same salary" it clearly stated and meant "re-elected." Appellant certainly is not to be "deemed re-elected" to a position in the Bullhead school where he had never taught; where he never desired to teach and where he was not qualified to teach.

The re-election contemplated by the statute is a re-election to the position to which appellant had already been seven times previously elected. The re-election intended by the legislature is one which results from the retention of the teacher in that class, grade or status to which such teacher so re-elected belongs. The teacher is elected to his own position, i. e., to a position previously held by him. Thus does the word "re-elected" used in section 1075, Revised Codes, mean that when a teacher is elected to or retained in a position which he already occupies he is said to be "re-elected" to such position. (*Hogsett* v. *Beverly Hills School District,* 11 Cal. App. (2d) 328, 53 Pac. (2d) 1009.)

By the non-action of the board of trustees was the appellant, under the statute, "deemed re-elected" to the position he previously held. From occupying and serving in this position was appellant wrongfully prevented by, respondent and for the resulting damage the respondent is liable. It was therefore error for the trial court to render judgment for respondent. Such judgment is reversed with directions to enter judgment for appellant for $706.50, interest and costs.

ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. JUSTICE MORRIS:

I dissent. The sole question for determination in this action is the interpretation of the written contract between the plaintiff and the school board. The majority decision converts the written contract of the parties into a scrap of paper and flies in the face of the elementary law of contracts. It is not debatable that a written contract supersedes all oral understandings and negotiations; that the intention of the parties is to be ascertained from the writing alone, if possible (secs. 7529, 7530, Rev. Codes), unless through fraud, mistake or accident it fails to express that intention (sec. 7531), and that the courts have no power to make new contracts for the parties. No fraud, mistake or accident is alleged nor proved.

While a teacher's employment is sometimes spoken of as an office, it is purely contractual and the present suit is solely in

contract. After a teacher is elected or chosen by the board of trustees, a contract in writing is required to be made and executed by section 1015, Revised Codes. His re-employment or re-election, either actual, or by default under section 1075, can effect nothing but a renewal of the contract under which he is serving.

It is my view that the intention of the parties to a contract must be determined from the language employed in the contract, and from that source alone, except where the language is indefinite or ambiguous; that resort to extrinsic evidence to discover such intention, by way of looking to the interpretation the parties themselves have given to the contract, can never be allowed if the terms of the contract are set out in clear, simple, and explicit language.

All of plaintiff's contentions and arguments are grounded on evidence *aliunde* the contract, and by that means he attempts by parol evidence to vary or contradict a clear provision of a valid written contract in violation of section 7569, Revised Codes. (See, also, *Kinsman* v. *Stanhope*, 50 Mont. 41, 144 Pac. 1083, L. R. A. 1916C, 443; *Pritchett* v. *Jenkins*, 52 Mont. 81, 155 Pac. 974; *Lish* v. *Martin*, 55 Mont. 582, 179 Pac. 826; *Swan* v. *Le Clair*, 77 Mont. 422, 251 Pac. 155.)

"There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: * * *." (Sec. 10516, Rev. Codes.) Five exceptions are specified by the section, none of which apply here, thus making the statute absolute in the case at bar. (See *Wilson* v. *Davis*, 110 Mont. 356, 103 Pac. (2d) 149.) The provisions of the contract that are pertinent to the issues involved are as follows:

"This Agreement, Made and entered into this 12th day of April, 1939, between J. R. Smith, party of the first part, and the Board of Trustees of School district No. 18, of Pondera County, Montana, parties of the second part,

"Witnesseth, That the said J. R. Smith, who holds a legal valid certificate for said county, hereby agrees for the consideration hereinafter stated, *to teach in said school district* for the period

of 9 months, commencing on the 2nd day of September, 1939, and said J. R. Smith agrees to enforce the rules and regulations prescribed by the Superintendent of Public Instruction and the County Superintendent of Schools.

"And The Parties of the Second Part hereby agree to pay the said J. R. Smith One Hundred and Forty Five Dollars for each and every month of twenty school days, in the manner following, to-wit: By drawing their order upon the county treasurer of said county to be paid out of the school moneys in the county treasury to the credit of said school district."

The contract is in plain and simple language and entirely free from ambiguity. After teaching in the Valier schools for several years the plaintiff was assigned to a rural school in the same district, and at the same salary. He refused to accept the assignment on two grounds: (1) Lack of living facilities for himself and family; and, (2) his lack of qualifications to teach in the lower grades. This last objection was in direct conflict with the teacher's certificate by virtue of which he was employed.

The function of the court is to construe the contract the parties have made themselves, not attempt to make a new contract for them. Whether the plaintiff "made a good or a bad bargain is not for the courts to determine. Rather it becomes the duty of the courts to enforce such contracts (*Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653; *Friesen* v. *Hart-Parr Co.,* 64 Mont. 373, 209 Pac. 986), not to make new ones for the parties, however unreasonable the terms may appear. (*Frank* v. *Butte & Boulder Mining & Lumber Co.,* 48 Mont. 83, 135 Pac. 904; *Pearce* v. *Metropolitan Ins. Co.,* 57 Mont. 79, 186 Pac. 687; *State Bank of Darby* v. *Pew,* 59 Mont. 144, 195 Pac. 852; *Friesen* v. *Hart-Parr Co.,* supra; *Emerson-Brantingham Imp. Co.* v. *Raugstad,* 65 Mont. 297, 211 Pac. 305; *General Fire Extinguisher Co.* v. *Northwestern Auto Supply Co.,* 65 Mont. 371, 211 Pac. 308.) Merely because the defendant may have reason to regret his bargain affords him no ground to avoid the obligation of his contract." (*McConnell* v. *Blackley,* 66 Mont. 510, 214 Pac. 64, 66.) Later cases to the same effect are *Hinerman* v. *Baldwin,* 67 Mont. 417,

215 Pac. 1103; *Batchoff* v. *Melzner*, 71 Mont. 411, 230 Pac. 48; *Viers* v. *Webb*, 76 Mont. 38, 245 Pac. 257; *Biering* v. *Ringling*, 78 Mont. 145, 252 Pac. 872; *Linn* v. *French*, 97 Mont. 292, 33 Pac. (2) 1002.)

"Resort to interpreattion [of a contract] is never to be had where the meaning is free from doubt. It is to be availed of only when, without its aid, the meaning or effect of the contract would be doubtful or uncertain." (*Ming* v. *Pratt*, 22 Mont. 262, 56 Pac. 279, 280; *Bullard* v. *Smith*, 28 Mont. 387, 72 Pac. 761; *Spaulding* v. *Maillet*, 57 Mont. 318, 188 Pac. 377.) This rule has, in numerous decisions by this court, been also expressed in another fashion, as in the leading case of *Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878, 880, where it was said relative to the interpretation of a statute that "whenever the language of a statute is plain, simple, direct, and unambiguous, it does not require construction, but it construes itself." The same rule of construction applies to contracts.

It is contended that, the plaintiff having been assigned by the school board to teach in the Valier schools and retained in that position for a number of years, such a state of facts clearly shows the construction the parties to the contract have placed thereon, citing *Cook-Reynolds Co.* v. *Beyer*, 107 Mont. 1, 79 Pac. (2d) 658; and 12 Am. Jur., sec. 249, at page 789. Both citations relate to indefinite or ambiguous contracts. The contract before us contains no ambiguity whatever. Sections 227, 228 and 229, Contracts, at pages 745 et seq. of 12 Am Jur., lay down the universal rules governing the construction of contracts that are not in terms ambiguous or uncertain which is to this effect: "'Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties * * *. The law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. *It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties* and then carry out that intention regardless of whether the instrument contains language sufficient to express it; *but their sole duty is*

*to find out what was meant by the language of the instrument.*
*\* \* \* In other words, the object to be attained in interpreting a*
*contract is to ascertain the meaning and intent of the parties as*
*expressed in the language used.*

"*A court is not at liberty to revise an agreement while pro-
fessing to construe it. Nor does it have the right to make a con-
tract for the parties \* \* \**. Neither abstract justice nor the rule
of liberal construction justifies the creation of a contract for the
parties which they did not make themselves or the imposition
upon one party to a contract of an obligation not assumed.
*Courts cannot make for the parties better agreements than they
themselves have been satisfied to make or rewrite contracts be-
cause they operate harshly or inequitably as to one of the parties.*
If the parties to a contract adopt a provision which contravenes
no principle of public policy and contains no element of am-
biguity, the courts have no right, by a process of interpretation,
to relieve one of them from disadvantageous terms which he has
actually made.

"*There is no right to interpret the agreement as meaning some-
thing different from what the parties intended as expressed by
the language they saw fit to employ. The court is not at liberty,
either to disregard words used by the parties, descriptive of the
subject matter or of any material incident, or to insert words
which the parties have not made use of.*" (12 Am. Jur., Con-
tracts, sec. 228, page 750.)

"A written instrument must ordinarily be interpreted to mean
what on its face it purports to mean, unless some good reason
can be assigned to show that the words used should be understood
in a different sense. Words are to receive their plain and literal
meaning even though the intention of the party drawing the
contract may have been different from that expressed. It is said
that the agreement of the parties is to be ascertained from the
plain language used by them, no matter what the intention may
have been. Presumptively, the intent of the parties to a contract
is expressed by the natural and ordinary meaning of their

language referable to it, and such meaning cannot be perverted or destroyed by the courts through construction. * * *

"Where the terms of a writing are plain and unambiguous, there is no room for construction, since the only office of judicial construction is to remove doubt and uncertainty. In such a case the courts have no right to make new contracts for the parties or ignore those already made by them, simply to avoid seeming hardships." (12 Am. Jur., Contracts, sec. 229, page 751 et seq.)

In *State ex rel. Normile* v. *Cooney*, 100 Mont. 391, 413, 47 Pac. (2d) 637, 648, this court said: "The courts are not guardians of persons *sui juris* to protect them from signing contracts into which they desire to enter; the province of the court is to interpret and enforce contracts in accordance with their terms, when legitimate and based upon a valid consideration." (Citing cases.)

The cases following have been cited to sustain the contentions of the plaintiff, but have no application to such a contract as that before us for the reasons stated as to each case.

In the case of *In re Womer* (*Appeal of Osceola Borough School Dist.*), 337 Pa. 349, 11 Atl. (2d) 146, the teacher was employed as a teacher and taught Civics for a time and was also assigned to incidental work as "teacher librarian." A renewal of her contract still mentioned that she was a "teacher" but she was assigned to the position of teacher librarian and subsequently dismissed on the ground that her certificate did not permit her to handle the position of teacher librarian. The court said:

"At the time appellee first entered the District's employ, she held a college provisional certificate, qualifying her to teach certain High School subjects. Her application for the position distinctly showed that she had no certificate to be a teacher-librarian. Despite the knowledge that she was not so qualified, the Directors of the School District on May 19, 1936, unanimously adopted a resolution electing her 'to the position of Teacher-Librarian in the High School at a salary of $130.00 per school month.' The following day, the Board entered into a written contract with appellee, employing her as a 'Teacher' for the

school year 1936-37, and continued her employment for the subsequent year by the contract of May 6, 1937.

"Under the terms of her contract appellee was not required to possess a certificate as teacher-librarian, nor was it essential to the performance of the duties actually designated for her by the Board. * * *

"Appellee's failure to hold a teacher-librarian certificate for the school year 1938-39 was no valid reason for her dismissal. She never occupied the position of librarian. She was never asked to teach library science. Her provisional college certificate, upon the basis of which she was hired, fully qualified her to perform all the duties to which she was assigned, and her competency and efficiency as a teacher have never been questioned. The condition upon which the Board based its action in terminating her contract was one of which the members were fully aware when she was employed. * * *"

In the case of *Williams* v. *School District No. 189,* 104 Wash. 659, 177 Pac. 635, Williams, according to his written contract, was employed as "principal" of District No. 173, Kings County. The district had two school houses. Subsequent to the employment of Williams, the two districts were consolidated and Williams was advised that a teacher from the other district had been made principal and Williams was demoted to a teacher serving under the new principal. He declined the assignment and sued for damages for breach of contract and was correctly sustained by the court.

In the case of *Jackson* v. *Independent School District,* 110 Iowa 313, 81 N. W. 596, 597, from which extended quotations are made, the teacher was employed to teach in the intermediate department of the schools of the district. After some two months she was discharged and after being discharged was offered another position in the higher grades, which she declined. The court found that the offer to teach in the higher grades could not be accepted without modifying the written agreement and said: "Plaintiff was entitled to teach until she was properly dis-

charged. As a result of defendant's wrongful conduct, she was prevented from complying with her contract.''

In *State ex rel. Ging* v. *Board of Education of Duluth* (*Minn.*), 7 N. W. (2d) 544, the two teachers were refused re-employment because of a heavy reduction in the number of pupils in the public schools, and the two teachers involved in the action were of advanced ages, sixty-five and sixty-four, and they were refused further employment on no other ground than that a reduction in the number of pupils necessitated a reduction in the number of teachers. The court sustained their contentions that they were discharged without notice or hearing in violation of the school tenure Act.

In the case of *People ex rel. Callahan* v. *Board of Education*, 174 N. Y. 169, 66 N. E. 674, the teacher held a certificate showing qualification to teach in any grammar grade in the City of Brooklyn. She was appointed to teach in the sixth grammar grade in Public School No. 89. Later she was transferred to School No. 90 to teach the fourth grammar grade, a higher grade, and later transferred back to another school to teach in grade six at a reduced salary. The court sustained her action for damages on the ground that the transfer to a lower grade was a violation of the tenure Act. It is questionable whether this case is pertinent here under the general laws relating to tenure in the various jurisdictions for the reason that the case was decided under charter provisions of Greater New York and not under a state statute.

In the case of *State ex rel. Bass* v. *Vernon Parish School Board*, (La. App.), 194 So. 74, the teacher, after serving for three years as principal of a high school at a salary of $175 per month, was transferred to a grade school at $100 a month, and the transfer and demotion were made without any charges being preferred or complaints made against him. The court upheld his action for damages.

The case of *Le Clair* v. *School District No. 28*, 74 Mont. 385, 240 Pac. 391, cited by plaintiff, is not in point. The written contract with the teacher in that case was for her employment as

"assistant principal of the Ronan school." She was denied re-employment in that capacity and no timely offer was made as here for other like employment in the district.

In *McBride* v. *School District No. 2, Silver Bow County*, 88 Mont. 110, 290 Pac. 252, also cited by plaintiff, the court found that the written notice to the teacher was not given in accordance with the provision of section 1075, Revised Codes, and that case is likewise not in point here. The further case of *Day* v. *School District No. 21*, 98 Mont. 207, 38 Pac. (2d) 595, cited by plaintiff is not in point, the court holding that the written notice was not given as required by section 1075, supra.

The judgment should be affirmed.

MR. CHIEF JUSTICE JOHNSON:

I concur in the dissenting opinion of MR. JUSTICE MORRIS.