The People of the State of New York ex rel. John S. Sprague, Respondent, v. William H. Maxwell, as City Superintendent of Schools in the City of New York, Appellant.

*List of those eligible for appointment to the position of principal of a public school in New York city — qualifications required — laches in applying to have a name entered thereon — judicial notice taken that the methods of instruction have changed.*

An application made June 13, 1903, under section 1081 of the original Greater New York charter (Laws of 1897, chap. 378) and section 1089 of the revised Greater New York charter (Laws of 1901, chap. 466) to have the applicant's name placed upon the list of those eligible for appointment to the position of principal of a public school in the city of New York, should be denied on the ground of *laches,* although the applicant claims that he was not aware of his rights until he made the application.

Ignorance of the provisions of a public act does not constitute any excuse for delay in asserting a right thereunder.

A person who, in 1855, obtained from the superintendent of schools in the city of New York a license rendering him eligible to teach in the grammar schools of the city of New York and eligible for appointment as principal or vice principal of such schools, and who, from 1861 until 1865, was a teacher in the grammar schools in the city of New York, but who, since then, has had no connection with such schools, is not entitled to have his name placed upon the list prepared under section 1089 of the Greater New York charter of those eligible for appointment to the position of principal in a grammar school in the city of New York.

The object of the provision of section 1089, relating to those holding licenses from city superintendents, was to continue upon the eligible list without further examination those engaged in teaching within the limits of Greater New York at the time the Greater New York charter took effect.

The court may take judicial notice that the methods of instruction have materially changed in the last quarter of a century, and that those who were competent to teach according to the methods then in vogue would not necessarily be qualified to teach now.

Appeal by the defendant, William H. Maxwell, as city superintendent of schools in the city of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of July, 1903, granting the relator's motion for a peremptory writ of mandamus requiring the defendant to place the name of the relator upon the list of persons eligible to be appointed as principals of public schools in the city of New York.

*Terence Farley*, for the appellant.

*Royal H. Weller*, for the respondent.

LAUGHLIN, J. :

The relator will be seventy years of age on the second day of November of the present year. From 1854 to the 30th of June, 1902, he was a teacher or principal in the public schools of Richmond, Westchester and New York counties. In the year 1855, after an examination as prescribed by law, he obtained a license as teacher of grade A from the superintendent of schools of the city of New York which rendered him eligible to teach in the grammar schools and eligible for appointment as principal or vice-principal. From 1861 to 1865, inclusive, he was a teacher in the grammar schools of the city of New York and this was his only connection with the public schools of said city. His last teaching was as principal of the Union Free School of District No. 3 at Rye, Westchester county, which position he held from 1883 to the 1st of July, 1902. On the 14th day of December, 1868, he obtained a license to teach in any district school within the State from the Superintendent of Public Instruction of the State, and on the 24th day of September, 1888, he obtained a similar license from the State Superintendent of Public Instruction to teach in any common school within the State.

The relator claims the right to have his name placed upon the eligible list by virtue of section 1081 of the Greater New York charter (Laws of 1897, chap. 378) and section 1089 of the revised charter (Laws of 1901, chap. 466, as amd. by Laws of 1901, chap. 718). He made no application to have his name placed upon the eligible list until the 13th day of June, 1903. The excuse presented for this delay is that the relator was not aware of his rights until that time. Ignorance of the provisions of a public act (see Greater N. Y. charter, § 1620, continued by Laws of 1901, chap. 466) is no excuse for delay in asserting any right thereunder. The motion should have been denied upon the ground of *laches*, even if the relator would have been entitled to the relief had he applied promptly. (*People ex rel. McDonald* v. *Lantry*, 48 App. Div. 131, 132; *People ex rel. Croft* v. *Keating*, 49 id. 123; *Matter of Murphy* v. *Keller*, 61 id. 145.)

Moreover, we are of the opinion that the relator would not have been entitled to the relief sought even if he had made his application with due diligence. Section 1081 of the Greater New York charter provides as follows:

" § 1081. A board of examiners is hereby constituted whose duty it shall be to examine all applicants requiring to be licensed in and for the city of New York, and to issue to those who pass the required tests of character, scholarship and general fitness, such licenses as they are found entitled to receive.  *  *  *  The board of examiners shall hold such examinations as the city superintendent may prescribe and shall prepare all necessary eligible lists. The city superintendent shall transmit to each school board the eligible lists that are available for use within its jurisdiction.  *  *  *  Graduates of colleges and universities recognized by the Regents of the University of the State of New York who have pursued for not less than one year pedagogical courses therein; graduates of schools and colleges for the training of teachers approved by the State Superintendent of Public Instruction; and teachers holding a State certificate issued by the State Superintendent of Public Instruction since the year eighteen hundred and seventy-five, or holding a college graduate's certificate issued by the same authority, may be exempted in whole or in part from such examination at the discretion of the city superintendent. The names of those to whom licenses have been granted, including those exempted from examination and those duly licensed in the several boroughs prior to the date on which this act takes effect, shall be entered by the city superintendent upon lists to be filed in his office, a separate list being made for each grade or kind of license for which the board of education shall, by its by-laws, make provision  *  *  *."

This section was substantially re-enacted as section 1089 of the revised charter (*supra*) and clearly contemplates and requires that the eligible list for each grade which the defendant is required to prepare and file in his office shall be composed of three classes, viz.: (1) Those to whom licenses have been granted by the board of examiners therein provided for; (2) those exempted from examination by the superintendent of schools as therein provided, and (3) those previously duly licensed in the several boroughs. The relator has not passed an examination or obtained a license from the board of

examiners, and, consequently, he does not fall within the first class. If the relator's application is based upon the licenses issued by the State Superintendent of Public Instruction it is clear that he would be obliged to submit to an examination by the board of examiners and obtain a license from them before being entitled to have his name placed upon the eligible list, unless he was specially exempted from such examination by the city superintendent of schools, and this is not shown. He, therefore, fails to bring himself within the second class. It is contended that he is included in the third class on account of the license issued to him by the superintendent of schools of the city of New York nearly fifty years ago. It is manifest that if this contention be sustained every teacher still living, no matter how old or incompetent, who was ever licensed by the superintendent of schools of any of the boroughs now embraced within the city would be entitled to have his or her name placed on the eligible list and would become eligible for reappointment without further examination. We may take judicial notice that the methods of instruction have materially changed in the last quarter of a century, and that those who were competent to teach according to the methods then in vogue would not necessarily be qualified now. It is clear that the Legislature intended in providing for these eligible lists that no names should be placed thereon except those of persons qualified to teach at the present time. The object of the provision relating to those holding licenses from city superintendents was to continue upon the eligible list without further examination those engaged in teaching within the limits of Greater New York at the time the Greater New York charter took effect. The respondent contends that the decision of this court in *People ex rel. Goldey* v. *Maxwell* (65 App. Div. 265), which was affirmed, without opinion, by the Court of Appeals (169 N. Y. 608) is *stare decisis* of the proposition that the clause of the statute, " those duly licensed in the several boroughs prior to the date on which this act takes effect," includes all holding licenses, no matter when issued and regardless of whether they were connected with the public schools in any of the boroughs when that act took effect. We find on examination of the record in that case that the relator was teaching in the public schools of the city as a vice-principal and acting principal at the time the Greater New York charter took effect, at the time the revised

charter became of force, and at the time of making the application. Consequently, the case could not have involved the question here considered. No material change affecting the relator's case was made by section 1101 of the revised charter of 1901.

It follows that the order should be reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

Patterson, J., concurred; Van Brunt, P. J., and Hatch, J., concurred in the opinion, and think also that the motion should have been denied on the ground of *laches;* Ingraham, J., concurred on the ground of *laches.*

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.