(79 Misc. Rep. 123.)

### PEOPLE ex rel. BERGOFFEN v. BOARD OF EDUCATION.

(Supreme Court, Special Term, Kings County. January, 1913.)

SCHOOLS AND SCHOOL DISTRICTS (§ 130*)—TEACHERS—ELIGIBLE LISTS—EXAMINATION.

Greater New York Revised Charter (Laws 1901, c. 466) § 1090, in the educational chapter, providing that existing eligible lists and the relative standing of persons on such lists shall not be affected by the passage of the act, is limited to lists of those entitled to appointment to the teaching staff of the public schools, and promotions are subject to such increased and higher standards as the educational requirements of the times demand, and one who at the enactment of the chapter held a certificate known as license No. 1, which was the initial grade of licenses qualifying the holder to teach in the public schools, has no vested right of promotion to teach a graduating class without examination as to fitness and qualifications, and a motion for peremptory mandamus to place his name on the eligible list for promotion must be denied.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 285, 286; Dec. Dig. § 130.*]

Application by the People, on the relation of Herman Bergoffen, for a peremptory writ of mandamus to the Board of Education of the City of New York. Denied.

Denis R. O'Brien, of New York City, for relator.
Samuel H. Ordway, of New York City, opposed.
Archibald R. Watson, Corp. Counsel, of New York City (Charles McIntyre, Asst. Corp. Counsel, of New York City), for Board of Education.

KAPPER, J. If the amendment of 1912 (Laws 1912, c. 455) to section 1089 of the revised charter (Laws 1901, c. 466), which fixed a three-year limitation upon the life of lists of those eligible for appoint-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment to the teaching staff of the public school system of the city of New York, had been placed in that charter upon its revision, we should not now be confronted with the vexatious problem which this case presents. The controversy here, and which has engendered considerable acrimony among those charged with the administration of the public school system, is as to the effect to be given to the following clause contained in section 1090 of the revised charter:

"Existing eligible lists in the city of New York and the relative standing of persons whose names are on said lists shall not be affected by the passage of this act."

As might naturally be expected, a wide diversity of view as to the interpretation of the clause quoted is entertained by the parties to this litigation. On behalf of the relator, a school teacher, and as would appear from the papers on this motion, some 3,000 other school teachers, all holding a certificate known as license No. 1, being the lowest or initial grade of license qualifying the holder to teach in the public schools of the city, it is claimed that such license at the time of the enactment of the educational chapter of the revised charter in February, 1902, qualified the holder for promotion to teach the much higher and the very much more important class generally known and entitled as the graduating class. For the purposes of this discussion, such will be regarded to have been the status of the relator and others similarly situated at the time of the adoption of the revised charter. It is then the further contention of the relator that by reason of the above-quoted clause (section 1090, supra) his right to thereafter be promoted was fixed, determined, and forever "vested," and that no additional mental qualifications touching his efficiency as a teacher entitled to promotion to teach a graduating class in the public schools of the city of New York (which were concededly thereafter imposed by the board of education) could be exacted of him.

On behalf of the city superintendent of schools, whose activity in this controversy entitles him to the characterization of being the real head and front of the opposition to the claims of the relator and the other holders of licenses No. 1, it is urged that the board of education possessed and exercised the power from time to time since the adoption of the revised charter to increase and raise the standards of efficiency and qualification of teachers for appointment and promotion to teach graduating classes, and that the relator is neither entitled nor qualified to be placed upon the eligible list for such promotion, and has not by the requisite examinations established or demonstrated the qualifications which for ten years last past have been required by the board of education of those who have been and are entitled to be appointed or promoted to teach said classes. The relator ignores all that the city superintendent urges against him, and plants himself firmly and squarely upon what he says is his statutory right (section 1090, supra) to be placed upon such eligible list. He says that this clause in the charter not alone entitled him to a standing upon such list, but that it also gave him a "vested" right to promotion to the position of teacher of a graduating class without further examination as to his fitness, and that his lack of qualifications or his deficiencies could not thereafter be inquired into when such promotion was to be had. If, therefore, this statute

accomplished what the relator claims it did, he may prevail on this application, otherwise not.

The contention is serious, and one which to my mind is fraught with some considerable peril to the educational system of the city. In fact, so much so that, if there is a reasonable doubt on this application as to the interpretation to be given to the clause relied on, it should in the interests of public education be resolved against the relator.

The objections to the relator's interpretation which appeal to me may be briefly stated.

First. The inequality of operation of the statute. As to all, who like the relator possessed license No. 1 prior to the revision of the charter, the mere possession of the license qualified for promotion. All thereafter licensed were required to possess the higher qualifications. Granting for the sake of the argument that the Legislature might by the mere fact of their incumbency qualify incumbents of the teaching staff for promotion, is it to be inferred that it did so qualify when it at the same time appropriately empowered the board of education to designate the kinds and grades of licenses to teach in the city of New York "together with the academic and professional qualifications required for each kind or grade of license" and to also designate "the academical and professional qualifications required for service of * * * all * * * members of the teaching staff"? Greater New York Charter, § 1089. Further, on this head, the relator concedes that, under his license, he is ineligible for promotion to teach a graduating class in the borough of Brooklyn. This disqualification results from the admittedly higher standard of teaching efficiency required by the borough school board of the borough of Brooklyn prior to the revised charter. He also says that, if it were not for the suspension in 1899 of a by-law adopted by the school board of the boroughs of Manhattan and the Bronx which imposed superior qualifications to those which his license required, he would be ineligible for promotion on his license alone in those boroughs. But he urges his absolute eligibility to teach the graduating classes in the schools of the boroughs of Queens and Richmond, basing his claim upon his having, prior to the revision of the charter, a license which met the standards fixed by the school boards of those two boroughs. Such a situation, if possible of existence, is intolerable. To uphold it is a reflection upon the intelligence of those boroughs and of any other borough against which alone such discrimination could be made. No wholesome reason can be assigned for the distinction, and no basis to uphold it ought to be narrowly sought. What was said by the Court of Appeals in People ex rel. Callahan v. Board of Education, 174 N. Y. 176, 66 N. E. 676, is pertinent:

"The claim that the old section has no prospective effect, but was limited to teachers already appointed, is met by the argument that it is unreasonable to believe that the Legislature intended to protect a part of the teachers only and to leave others of the same class unprotected simply because they were appointed at a later period. Two kinds of tenure for teachers applicable to the same position, in the same city, but founded upon no substantial distinction, would be an anomaly in legislation. It would be without reason or justice, and an unreasonable or an unjust purpose should not be attributed to the Legislature unless its language conclusively requires it."

Second. By section 9 of article 5 of the Constitution "appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive."

In People ex rel. McClelland v. Roberts, 148 N. Y. 366, 42 N. E. 1084, 31 L. R. A. 399, this language was said to be so broad and imperative as to place the principle of appointments according to merit and fitness to be ascertained by competitive examination, as practically beyond the control of the Legislature and secure from any mere statutory changes; and that, if the Legislature should repeal all the statutes and regulations on the subject of appointments in the civil service, "the mandate of the Constitution would still remain, and would so far execute itself as to require the courts, in a proper case, to pronounce appointments made without compliance with its requirements illegal." What was said here of appointments applies with equal force to promotions. Whilst I am not deciding that the clause in question if given the effect of a promotion by the Legislature is in violation of the section of the Constitution referred to, I do think that the enactment ought not to be regarded as a right to promotion unless that is the only view permissible.

The question then is: Can we find a fair and reasonable basis for the operation of the clause in question? In my opinion we can and that is by a limitation of it to the cases of original appointment or appointments in the first instance. Section 1089 covers the subject of examinations of applicants for appointment to the position of teacher. It contemplates such examinations by the board of examiners as the city superintendent may prescribe, and the preparation of all necessary eligible lists as the result of such examinations. It is apparent from its reading that no one shall be placed upon an eligible list for appointment to the teaching staff without an examination, excepting those whom the city superintendent in his discretion might exempt from such examination and they are specified as (1) graduates of certain colleges who have pursued the course therein mentioned; (2) graduates of teachers' training schools and colleges; (3) those holding the certificate of the state superintendent of public instruction; and (4) those who on the first Monday of February, 1902, were borough superintendents of schools in the city of New York. Hence we see that a certain class by examination were entitled to be and other classes by virtue of other qualifications might be placed upon eligible lists for appointment in the first instance. In the same section we find, as already referred to, the powers of the board of education to fix standards of qualifications which, confessedly in this case, relate as well to promotions as to first appointments. Now what lists were intended to be preserved by the clause in question? Was there danger of destruction of existing lists of those entitled to appointment in the first instance? I think there was. First, there were those college graduates who pursued the one year pedagogical course; secondly, there were the graduates of teachers' training schools and colleges; and, thirdly, there were the holders of the certificates of the state su-

perintendent of instruction. All these classes were listed pursuant to the old charter (section 1081), provided they were exempted by the city superintendent from further examination. And the plan of preserving existing eligible lists finds support in relieving those classes from the further exercise of discretion as to exemption by the city superintendent. The language of the clause under discussion must be kept in view. It refers to neither appointments nor promotions. But it was easy for the Legislature to have stated it, had it intended that eligible lists for promotions were intended to be preserved. It found no difficulty in expressing it as to the Brooklyn teaching force, for by section 1101 it used these plain terms:

"All licenses to teach or certificates of qualifications for teaching granted by the superintendent of public instruction of the city of Brooklyn, or by authority of the board of education of the said city of Brooklyn, prior to February first, eighteen hundred and ninety-eight, or recognized by the board of education of the said city of Brooklyn or the state superintendent of public instruction as in force at that date in said city, shall unless revoked for cause by the state superintendent of public instruction, be recognized by the city superintendent of schools and the board of examiners of the city of New York, as in full force, and shall entitle the holders to appointment or *promotion* to any position to which they were respectively eligible by the possession of such licenses or certificates."

Therefore, reading the various sections of the charter as the occasion to my mind demands, the clause in question is given a rational, fair, and appropriate meaning by limiting it, as I think it ought to be limited, to lists of those entitled to *appointment* as teachers and that *promotions* were subject to such increased and higher standards and qualifications as the educational requirements of the times should seem to demand.

Before we should ascribe to the Legislature an intention to "vest" a permanent right in teachers of the more elementary classes of our public schools to a promotion to teach graduating classes, without showing fitness and qualification at the time of promotion, we should find it expressed in the clearest and most explicit terms, and not in a clause of such doubtful and uncertain meaning as that under review. It would indeed be charging the Legislature with an almost unpardonable lack of foresight to hold that it had enacted that "once eligible" for certain branches of school teaching rendered one "forever eligible." It might do to so interpret in some kinds of service, even of a public nature, but not in so vital a sphere as public education with its almost daily mutations and inevitable progression. It is a far cry from the primitive schoolhouse of the "Three R's" to the present curriculum of the educational system of the city of New York, and, however sad the commentary, the qualifications of the teacher of a generation or even a decade ago may be wholly deficient at this time. In People ex rel. Sprague v. Maxwell, 87 App. Div. 391, 394, 84 N. Y. Supp. 947, 950, where the relator claimed the right to be placed upon the eligible list for appointment to the position of principal of a public school in the city of New York by reason of a license obtained in 1855 from the superintendent of schools in said city, the court say:

"It is manifest that, if this contention be sustained, every teacher still living, no matter how old or incompetent, who was ever licensed by the

superintendent of schools of any of the boroughs now embraced within the city, would be entitled to have his or her name placed on the eligible list, and would become eligible for reappointment without further examination. We may take judicial notice that the methods of instruction have materially changed in the last quarter of a century, and that those who were competent to teach according to the methods then in vogue would not necessarily be qualified now."

Whether teaching efficiency is present or lacking must be determined by the authorities to whom the Legislature intrusted the care and maintenance of the educational system, and to curb or curtail it should not be countenanced by the courts unless absolutely essential to an enforcement of a plain, express, unequivocal, and emphatic legislative command.

It is further argued by the relator that the placement of his name on the eligible list for promotion to teach the graduating class does not necessarily mean that the promotion will follow, and that the board of education, when he is nominated by the board of superintendents for promotion pursuant to section 1090 of the revised charter, may ignore or reject him. Bearing in mind that about 3,000 teachers are in the same class with the relator, this proposition must assume that, in order to obtain duly qualified teachers of graduating classes who will measure up to existing standards, the board will ignore or reject the entire class. If they are on the eligible list for promotion, this wholesale rejection would be such an evidence of bad faith and unjust discrimination as to be almost self-condemnatory. The board of education should not be placed in any such attitude.

If the foregoing views are correct, the present position of the board of education is erroneous, and it therefore follows that the increased standards for promotions which were fixed from time to time by the board and which disqualified the holders of license No. 1 must prevail. The motion for a peremptory writ of mandamus should be denied.

Motion denied.