(A.R.D. 174)

WILMINGTON SHIPPING COMPANY *v.* UNITED STATES

Entry No. 126, etc.

## Third Division, Appellate Term

(Decided May 11, 1964)

*Allerton deC. Tompkins* for the appellant.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: On application of appellant (plaintiff below), we have reviewed the decision of the trial judge. He dismissed these appeals to reappraisement, holding that they were filed before appraisement and, hence, were not lawfully filed under the provisions of section 501, Tariff Act of 1930.

When the reappraisement appeals were called for trial in Wilmington, N.C., defendant moved to dismiss them on the ground that they had been prematurely filed. The official papers were received in evidence on defendant's motion, as were also certain documentary exhibits offered by plaintiff (exhibits 1 to 4, inclusive). The former assistant collector of customs at Wilmington, Mr. Edward C. Snead, was called by appellant (plaintiff below) and testified. In support of its motion, appellee (defendant below) introduced no proofs other than the official papers.

The facts are not in controversy. This merchandise is plywood, exported from Japan between January 25, 1960, and June 10, 1960, and consigned to appellant. Some shipments were for the account of Thomas Plywood Corp. of Fayetteville, N.C.; other shipments were for the account of United Plywood Co. of London, England. Appellant, in entering these plywood shipments, retained as consultant Mr. Edward C. Snead, then a customs broker, but who, for upwards of 32 years, prior to 1959, had been in customs service. His official positions included assistant collector at Wilmington, N.C., and at Charleston, S.C.; acting collector at Wilmington; and administrative officer with the Bureau of Customs.

The reports of the appraiser to the collector on forms entitled "Summary of Entered Value," with respect to this merchandise, are dated November 10, 1960. Written notices of appraisement, issued by the assistant collector, are dated that same day, and appellant does not dispute the fact that such notices of appraisement were duly mailed to appellant on November 10, 1960. The appeals to reappraisement were filed November 2, 1960, and November 3, 1960, prior to issue of such notices.

Section 501 provides as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

What appellant argues is, in substance, that on the facts shown in opposition to defendant's motion to dismiss the appeals, it has proved that the decision of the appraiser has not become final and conclusive, under section 501, because written appeals for reappraisement were, in fact, filed with the collector within 30 days *after* personal delivery of *written notices* of appraisement by the collector to appellant, as section 501 requires. What appellant asks us to construe as the collector's written notices of appraisement, required by section 501, are the appraiser's notices of probable unpaid duties, dated October 28, 1960, sent by the appraiser to appellant. Such notices advised that the appraiser contemplated appraisement at certain increased values.

On November 2, 1960, after receipt by appellant of the appraiser's notices of probable unpaid duties, Mr. Snead, acting in appellant's behalf, personally requested the appraiser to withhold his report of appraisement for 20 days. This the appraiser said he would not do. He told Mr. Snead (November 2, 1960) that the merchandise had, in fact, already been appraised. Nevertheless, his signed report to the collector is dated November 10, 1960, and the collector's written notices of appraisement also bear that date.

The assistant collector at Wilmington, with whom Mr. Snead talked after his conference with the appraiser, confirmed to Mr. Snead that appraisement had been made, at the values advised in the appraiser's written notice of probable unpaid duties which Mr. Snead showed to the assistant collector.

The question is, do these oral exchanges, in combination with the appraiser's written notice of probable unpaid duties, constitute the notice of appraisement which the *collector* is required to give, under section 501, and which is the notice starting the statutory period within which appeals to reappraisement may be filed.

Admittedly, it was the appraiser, not the collector, who signed and issued to appellant the notices of probable unpaid duties. Admittedly, it is the collector whose written notice of appraisement, under section 501, starts the period for filing an appeal to reappraisement. What appellant argues is, in effect, that the collector orally adopted, as his written notice of appraisement under section 501, the appraiser's written notice of probable unpaid duties when, on November 2, 1960, the assistant collector at Wilmington, Mr. James E. Townsend, in conversation with Mr. Snead, representing appellant, advised Mr. Snead (1) that the merchandise had been appraised on October 28, 1960, and (2) that appraisement was at the values recited in writing in the notices of probable unpaid duties which Mr. Snead had previously received from the appraiser.

Section 8.29(c) of the Customs Regulations, as amended, is as follows:

> If the examiner believes that the entered rate or value of any merchandise is too low, or if he finds that the quantity imported exceeds the entered quantity, and the estimated aggregate of the increase in duties in the shipment exceeds $15, he shall promptly notify the importer of record on every shipment, on such form as may be appropriate at the port, and specify the nature of the difference on the notice. The report of appraisement shall not be withheld unless in the judgment of the appraiser there are compelling reasons that would warrant such action.

It has been held that notice of appraisement need not be in any particular form, but that it must give notice that the merchandise *has been appraised*. *C. S. Emery & Co.* v. *United States*, 11 Cust. Ct. 8, C.D. 782. The notice of increased and additional duties, prepared on customs Form 5107, required to be sent out after liquidation, has

been held not to constitute notice of appraisement. *Orlix Dyes & Chemicals Corporation* v. *United States*, 41 Cust. Ct. 168, C.D. 2036. A purported notice of appraisement which does not bear a signature is not the notice section 501 requires. *Inlander-Steindler Paper Co.* v. *United States*, 40 Cust. Ct. 825, Reap. Dec. 9150. The court there said:

It is the notice of advance in value of imported merchandise, sent by the collector, in compliance with section 501, which validates and legalizes the appraisement. Until such notice is sent by the collector, the appraisement is incomplete and, consequently, there is no final appraised value for the merchandise upon which the collector can base a liquidation. The so-called notice in this case is nothing more than a sheet of paper with certain figures and words thereon, with nothing to indicate that it was sent by the collector, as required by said section 501. The fact that said form is prepared for the signature of a "Deputy Collector," with no name or signature thereon, suggests that it might not have been sent by either the collector or deputy collector. [P. 829.]

In a subsequent hearing in the same case, testimony was introduced to show that the notice did contain a proper signature (*Inlander-Steindler Paper Co.* v. *United States*, 45 Cust. Ct. 446, Reap. Dec. 9756), but the stated principle of law is not affected by the later decision on different facts.

In a recent case, *Phillipp Brothers Chemicals, Inc.* v. *United States*, 51 Cust. Ct. 35, C.D. 2410, a notice of appraisement that was sent on a form which recited that it was "given for the reason checked below," but where none of the printed reasons was checked, was held not to be the required section 501 notice of appraisement.

The court said:

A statement of official action is required to be definite and a blanket notice is not sufficiently definite to meet this required standard. It follows that a notice which recites that it is being sent "for the reason checked below" and lists three reasons without checking or specifying which one is applicable to the noticee's importation is a "blanket notice" and no notice in law. *Ambler* v. *Patterson*, 114 N.W. 781, 782, 80 Neb. 570. An appraisement is not complete without a valid notice of appraisement to the noticee. Where the notice of appraisement is a blanket notice it is defective, and an appraisement completed upon such defective notice is invalid. * * *

The appraiser's notices of probable unpaid duties do not constitute the collector's notices of appraisement *per se;* but appellant claims that the collector adopted them as his written notices of appraisement and constituted them a personal delivery of written notices of appraisement by his statement to Mr. Snead. According to the record, the assistant collector stated orally to Mr. Snead that appraisement had been made at the values set forth in the notices of probable unpaid duties, and also stated that, in his opinion, this conversation about appraisement constituted personal delivery of the statutory written notice. Since the statute provides definitely for a written notice of *appraisement*, the written notice of probable unpaid duties, plus such conversations, or oral notice, does not satisfy the statutory

requirement. *Smith* v. *School Dist. No. 18, Pondera County*, 115 Mont. 102, 139 P. 2d 518; 66 CJS, section 16.

In view of the fact that no written notices of appraisement were delivered to appellant's agent, either personally or by mail, prior to November 10, 1960, these appeals were filed prior to the commencement of the statutory period of 30 days within which, and only within which, appeals may be filed.

Appellant claims, however, that the appraiser actually made his appraisements on or before November 2, 1960, and that appeals may be filed within 30 days thereafter even though the statutory period, under section 501, has not commenced to run. It is necessary, therefore, to consider when this merchandise was appraised.

Appellant argues that *United States* v. *European Trading Co.*, 26 CCPA 103, C.A.D. 1, supports its claim.

The issue there was timeliness of an application by the Government for review of a judgment of this court, under decision of a single judge, sitting in reappraisement, on March 4, 1937. Judgment was entered the same day in the clerk's office in New York City. The decision was filed with the collector at Seattle, on March 8, 1937. On that day, the Government filed with the Customs Court in New York City its application for review. It was argued by the importer that the application for review of the judgment below was filed prematurely because, there being a 3-hour time differential between New York and Seattle, the decision could not have been filed with the collector at Seattle on March 8, at an hour prior to the hour when the application for review was filed in New York. Section 501 of the Tariff Act of 1930, as then effective, provided:

* * * Such [reappraisement] decision shall be final and conclusive upon all parties unless within thirty days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to the United States Customs Court by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the United States Customs Court.

The court pointed out that the decision and judgment were duly promulgated on March 4, 1937; that the 30-day provision, section 501, is primarily a statute of limitations, its object being to fix a time after which the decision will become final and conclusive, *unless* an application for review has been filed. The court said:

In our opinion, when a decision or judgment is rendered by the Customs Court and duly promulgated, and an appeal or application for review thereof is permitted by statute, such application or appeal may be taken at any time between the promulgation of such decision or judgment by the Customs Court and the expiration of the time permitted by the statute for the filing of such application for review or appeal.

No possible legislative purpose could be served in requiring the Government or the importer to wait until a decision had been filed with the collector before it or he might file an application for review, and it is not reasonable to suppose that Congress ever intended any such limitation upon the right of review provided for by section 501. [Pp. 111, 112.]

The court pointed out, however, that "an appeal filed before entry of the judgment sought to be appealed from is premature and void," and distinguished cases where appeals were taken before judgment had been entered.

If the 'principle of that case is to be applied here, and we think it should be applied, it must first be determined whether there had been appraisement of this merchandise prior to the filing of these appeals, inasmuch as in order "to appeal for reappraisement there must necessarily be an appraisement to appeal from." *United States* v. *W. X. Huber*, 41 CCPA 69, C.A.D. 531.

Appellant argues that there had been appraisements, and this argument is based on the statement of Mr. Snead that he was advised, on November 2, 1960, in the office of the appraiser, that appraisements had been completed on October 28, 1960; and also on the statement of assistant collector Townsend the same day, that appraisements had been made and at the values stated in writing in the appraiser's notices of probable unpaid duties. Nevertheless, the fact is that the appraiser's returns to the collector are dated November 10, 1960, and notices of appraisement were mailed by the collector on that day.

The evidence of the decision of the appraiser is found in his official return. *Muser* v. *Magone*, 155 U.S. 240. The term "appraiser's report" means his report to the collector giving his decision as to the appraised value. *United States* v. *W. X. Huber, supra*. The actual decision of the appraiser is made when he files his report with the collector. *Peabody & Co.* v. *United States*, 12 Ct. Cust. Appls. 354, T.D. 40491. Appraisement is not complete and final until such report is lodged with the collector. Prior to that time, the appraiser may make alterations, but he may not do this after he returns his report to the collector for then there is appraisement. *United States* v. *C. V. Vance (International Milling Co.)*, 69 Treas. Dec. 1637, Reap. Dec. 3904; *United States* v. *Gothic Watch Co.*, 23 Cust. Ct. 235, Reap. Dec. 7712. Section 501 requires a written notice of appraisement to be given, and appraisement is not complete until such notice has been forwarded to the consignee, his agent, or attorney, either by personal delivery or by mailing. *Peabody & Co.* v. *United States, supra; Joseph Fischer as Liquidating Agent of Schmoll Fils Associated, Inc.* v. *United States*, 23 Cust. Ct. 1, C.D. 1179, affirmed on other grounds 38 CCPA 143, C.A.D. 452; *Inlander-Steindler Paper Co.* v. *United States*, 45 Cust. Ct. 446, Reap. Dec. 9756.

In the instant case, therefore, it seems to us that appraisements were not complete until November 10, 1960. On that date, reports of appraisement were lodged by the appraiser with the collector. Prior to November 10, 1960, "probable" values could be reconsidered by the appraiser, and could be changed. Written notices of appraisement were not mailed by the collector to the consignee until November 10, 1960. As stated above, the earlier personal delivery of notice prior thereto was not the personal delivery of a *written notice of appraisement*, such as section 501 requires. Since the appraisements were not completed until November 10, 1960, appeals filed prior to that date are premature. They were filed before appraisement, and must be dismissed.

It is regrettable that customs officials told plaintiff's agent that the merchandise had been appraised on October 28, 1960, and advised him to file appeals for reappraisement at that time. However, written notices of appraisement were sent to plaintiff when the appraisement was completed, and plaintiff could then have investigated and could then have filed timely appeals. It is well settled that customs officials are not required to advise importers as to the nature and extent of their rights. *Jacksonville Paper Co.* v. *United States*, 30 CCPA 159, C.A.D. 228; *F. B. Wilcon* v. *United States*, 13 Cust. Ct. 96, C.D. 876; *United States* v. *Kenneth Kittleson and E. W. Rollow*, 43 CCPA 31, C.A.D. 605. In the *Jacksonville* case, the court said:

That the importer was "influenced" by the officials to make the entry seems to be true, and the importer's agents evidently obtained the impression that such entry was "required" as a condition precedent to obtaining the merchandise, but it could not have been legally "required," and had importer tendered proper bond all its statutory rights could have been preserved by its following the defined statutory procedure. [Pp. 164, 165.]

There are certain legal precepts that may not be overlooked. It is well settled that there is no inherent right to sue the United States, that such right is permissive, and that a suit against the United States can be maintained only pursuant to the terms laid down in the grant of permission. Congress may attach to its consent to sue such conditions as it deems proper. *Reid* v. *United States*, 211 U.S. 529; *United States* v. *Loeb & Schoenfeld Co.*, 7 Ct. Cust. Appls. 380, T.D. 36961; *ex parte Bakelite Corporation*, 279 U.S. 438; *Munro* v. *United States*, 303 U.S. 36; and others.

Appellant has failed to bring itself within the statutory grant of permission conferred by section 501.

The decision and judgment of the trial court dismissing the appeals, as being prematurely filed, are affirmed.

Judgment will enter accordingly.