Wilmington Shipping Company v. United States  (No. 5183)*

United States Court of Customs and Patent Appeals, June 17, 1965

*Allerton deC. Tompkins* for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Harvey A. Isaacs* for the United States.

[Oral argument April 5, 1965, by Mr. Tompkins and Mr. Isaacs]

Before Rich, Acting Chief Judge, and Martin, Smith, and Almond, Jr., Associate Judges

*C.A.D. 864.

MARTIN, Judge, delivered the opinion of the court:

This is an ■■ appeal by the importer from a judgment of the United States Customs Court, Third Division, Appellate Term, 52 Cust. Ct. 642 (A.R.D..174), in which the Appellate Term affirmed the dismissal of appeals for reappraisement holding that they were prematurely filed, and thereby not lawfully filed under the provisions of section 501 of the Tariff Act of 1930 (19 USC 1501).

There is no controversy with reference to the facts. The merchandise is plywood imported from Japan. The reports of appraisement from the appraiser to the collector are dated November 10, 1960. There is no dispute that these reports were mailed on that day to appellant. However, appeals for reappraisement were filed on November 2 and 3, 1960. The pertinent facts leading to the filing of the appeals on November 2 and 3 were summarized by the trial court as follows:

It appears from the official papers and other evidence of record that said appeals for reappraisement relate to several shipments of plywood, exported from Japan between January 25, 1960, and June 10, 1960, consigned to plaintiff for the account either of Thomason Plywood Corp. of Fayetteville, N.C., or United Plywood Co. of London, England. In making entry of said shipments, plaintiff retained, as a consultant, one Edward C. Snead, a customhouse broker, who, for upwards of 32 years prior to 1959, held various positions in the customs service, including those of assistant collector of both Wilmington, N.C., and Charleston, S.C.; acting collector at Wilmington, and administrative officer with the Bureau of Customs.

In an affidavit, dated April 20, 1961, admitted in evidence as plaintiff's exhibit 1, Mr. Snead recited the details of his actions with respect to the involved entries. He explained that, on or about October 29, 1960, plaintiff delivered to him a set of "Notice[s] of Probable Unpaid Duties or Taxes" (plaintiff's collective exhibit 2), in which plaintiff was advised that the values in the several cases would be advanced; and that 20 days would be allowed for the presentation of objections to the contemplated action.

On November 2, 1960, Mr. Snead discussed the entries in question with the appraiser of merchandise at Wilmington, with the object of seeking an extension of time beyond the 20 days allowed in the notices. He was, however, informed that appraisement had been completed on the same date the notices were issued, under authority of section 8.29(c) of the Customs Regulations, as amended.[1] Thereupon, he conferred with the assistant collector of customs who "upheld the right of the Appraiser in this matter," and "notified me in his official capacity that an appraisement had been made at the values set forth in writing on the 'Notices of Probable Unpaid Duties or Taxes', and he stated that I should advise the Wilmington Shipping Company to file appeals to reappraisement immediately."

---

[1] Section 8.29(c), Customs Regulations, as amended :

If the examiner believes that the entered rate or value of any merchandise is too low, or if he finds that the quantity imported exceeds the entered quantity, and the estimated aggregate of the increase in duties in the shipment exceeds $15, he shall promptly notify the importer of record on every shipment, on such form as may be appropriate at the port, and specify the nature of the difference on the notice. *The report of appraisement shall not be withheld unless in the judgment of the appraiser there are compelling reasons that would warrant such action.* [Emphasis ours.]

Thereupon Snead filed the notice of appeal on November 2 and 3.

In pursuing this appeal, appellant forwarded the affidavit of Mr. Snead to the assistant collector of customs in Wilmington, with whom Snead had discussed the matter, for the purpose of determining whether it correctly recited the above-stated events. The assistant collector, Mr. Townsend, replied by a letter, of record, that he believed the affidavit to be correct in all essential details, and that it was his *personal* opinion:

\* \* \* that the conversations which took place between customs personnel and Mr. Snead on or about November 2, 1960, concerning the appraisement of the above mentioned entries did constitute personal delivery of notice of appraisement as contemplated under section 501 of the Tariff Act.

The pertinent section of the statute, section 501 of the Tariff Act of 1930, as amended, reads as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written noice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

It is appellant's contention that appraiser's notices of probable unpaid duties dated October 28, 1960 sent by the appraiser to appellant, coupled with the oral exchanges between appellant's representative Snead and the assistant collector of customs, amounted to *personal delivery* of notice of appraisement within the meaning of section 501. Appellant maintains this position even though the collector subsequently sent to appellant a *written* notice of appraisement as required by section 501.

Congress has set forth a very precise procedure under section 501 of the Tariff Act of 1930 which must be followed in order to perfect appeals for reappraisement of imported merchandise. The issue here is whether that procedure has been followed in this instance.

We do not believe that the requirements of section 501 have been complied with here. First, the notices of probable unpaid duties are not the *written* notices of appraisement required under section 501, and second, the conversations between appellant's representative and the customs officials are without legal effect. They cannot be substituted for the procedure set forth in section 501.

Furthermore, the appeals for reappraisement filed by appellant

were premature since no notice of appraisement was legally transmitted by the *collector* to appellant until November 10, 1960. Therefore, on November 2 and 3 there was no legal appraisement from which to appeal. ■ Until the notice of appraisement is properly transmitted, the appraisement is not final and conclusive. The Customs Court had this to say about the situation:

The appraiser's notices of probable unpaid duties do not constitute the collector's notices of appraisement *per se;* but appellant claims that the collector adopted them as his written notices of appraisement and constituted them a personal delivery of written notices of appraisement by his statement to Mr. Snead. According to the record, the assistant collector stated orally to Mr. Snead that appraisement had been made at the values set forth in the notices of probable unpaid duties, and also stated that, in his opinion, this conversation about appraisement constituted personal delivery of the statutory written notice. Since the statute provides definitely for a written notice of *appraisement,* the written notice of probable unpaid duties, plus such conversations, or oral notice, does not satisfy the statutory requirement. *Smith* v. *School Dist. No. 18, Pondera County,* 115 Mont. 102, 139 P. 2d 518; 66 CJS, section 16.

In view of the fact that no written notices of appraisement were delivered to appellant's agent, either personally or by mail, prior to November 10, 1960, these appeals were filed prior to the commencement of the statutory period of 30 days within which, and only within which, appeals may be filed.

It is obvious that the requirements of section 501 were not followed in this case and, therefore, the judgment of the Customs Court is *affirmed.*

WORLEY, C.J., did not sit but is participating by agreement of counsel.

---

WORLEY, Chief Judge, concurring.

No matter where our individual sympathy might lie, this is no matter to be decided by mood or emotion. Rather it demands a proper respect for the law-making prerogatives of the Congress, a respect properly recognized by the trial judge, the appellate judges, and the majority here.

In accord with the generally accepted principle that this is a government of laws rather than men, Congress enacted section 501. In so doing, Congress hardly deserves the whipping boy role to which criticism of that section assigns it. Quite the contrary, that section in clear and readily understandable language prescribes orderly procedure for the importer and Government alike. Had that section been heeded, rather than ignored by the Government once and the importer twice, these proceedings would have been unnecessary.

That Congress had good reason to employ the term "written notice," rather than oral exchanges, should be amply evident from the instant efforts to substitute the latter for the former.

Even if this court had the power, which it does not have, to validate

the instant activities, such action would inevitably lead to an intolerable administrative and legal chaos. I am satisfied Congress must have thought section 501 would prevent such a result. Thus far it has.

RICH, Judge, dissenting.

I respectfully dissent on the authority of *United States* v. *European Trading Co.*, 26 CCPA 103, C.A.D. 1, a most pertinent decision of this court dealing with the question of premature appeal which I do not find mentioned in the majority opinion, though relied on below and especially by appellant here.

It is a bit obvious that the appraiser cannot send out a written notice of appraisement without first *making* the appraisement and the first question here is, *when* did he make it? He told appellant's agent, Mr. Snead, himself a former assistant and acting collector of customs, that he *had made* it on October 28, that information having been given to the agent on November 2, 1960, on the same day the assistant collector confirmed that the appraisement had already been made. *Thereafter*, on November 2 and 3 the appeals to reappraisement were filed.

Who is better qualified to know when the appraisement is made than the appraiser himself? Note the recitation in the opinion below, quoted by the majority, of the fact that the assistant collector "upheld" the appraiser in his right to have made the appraisal on October 28, though it was the same day he sent out the notice of probable unpaid duties. Note further that Customs Regulations Section 8.29(c), quoted in footnote 1 of the quoted opinion tells the appraiser that in sending out such a notice he need not withhold his report of appraisement. In other words, the notice of probable unpaid duties and actual appraisement can go forward simultaneously, as they did in this case. As the single judge below stated it:

He was, however, informed that appraisement had been completed on the same date the notices were issued, under authority of section 8.29(c) of the Customs Regulations, as amended.

Another statement by the same judge, not quoted by the majority, was:

The regrettable aspect of the situation which is here revealed is that quite clearly both the appraiser and the assistant collector advised the representative of the plaintiff that the subject entries *had been appraised* on October 28, 1960, the date when notices of probable unpaid duties or taxes were forwarded. [My emphasis.]

I do not feel the legal helplessness in the face of such "regrettable" facts which the majority and the tribunals below seem to feel.

While section 501 no doubt requires the appraiser to give a notice in writing, *for the benefit of the importer*, I do not see where it requires the importer to sit with his hands folded until he receives such a notice,

after he has already been advised of the making of an appraisement by the two people most concerned on behalf of the Government, before filing an appeal. The second sentence of section 501, relating to such appeals, as distinguished from the first sentence which is the notice requirement binding the collector but not necessarily the importer, quite clearly says that the *decision* of the appraiser (not the notice of the collector) shall be final and conclusive unless appeal is filed, inter alia, "within thirty days after the date of personal delivery * * *."

I am unable to see the "precise procedure" which the majority finds so conclusive here. In fact, section 501 seems rather confusing to me. First, it refers to a "written notice" by the collector. This sentence was added in 1930, and later in part, to the 1922 section 501 which did not contain it. Next it mentions a "decision" by the appraiser. Then, as to the time for filing the appeal, it first mentions sixty days from the *appraiser's* "report." If I read the statute aright, as it was read in *United States* v. *W. X. Huber*, 41 CCPA 69, C.A.D. 531, that refers to a report by the appraiser *to the collector* under section 500 (a) (5). Next, it refers to appealing within thirty days after "personal delivery" without stating *what* is to be personally delivered.[1] The majority seems to presume a reference here to the written notice required in the first line of the section but it could as well be personal notice of the appraiser's *decision;* the personal delivery clause follows directly after the reference to the report but surely it does not refer to that because the report is delivered to the collector, not to the importer. The next clause states the third alternative, within thirty days of the *mailing* of the written notice, *if* one is mailed. Three different time-limit provisions thus appear in the statute, the starting events being (1) an appraiser's report to a collector, (2) a personal delivery of something or other by someone and (3) the mailing of the written notice. I can find nothing in reason or logic or policy which requires us to insist that the something or other is the collector's written notice in a situation where both the appraiser and the assistant collector have personally advised the agent that the *decision* of the appraiser *has been made* (presumably it was written down somewhere) and that he had better file his appeal. Why must he stand around waiting for a written notice?

Time limitations on appealing from *decisions* are cut-off provisions to *put an end* to a right, not penalties for being too diligent in pro-

---

[1] It is interesting to note that this obscure language comes from section 501 of the Tariff Act of 1922 which *did not contain* the first sentence of section 501 *requiring* the written notice. There was therefore no prior reference to a written notice to function as an antecedent for the words "personal delivery." The former times were 60 days after the appraiser's report to the collector, 10 days "after the date of personal delivery"—of what was not then and is not now stated—and finally 10 days after mailing of a written notice, that being the first reference in old section 501 to a "written notice." The section 501 referred to in the *Peabody* case cited below (12 Ct. Cust. Appls. 354, T.D. 40491) was not the same 501 we have before us.

tecting the right. We are not faced with a situation where no appealable *decision* had been made. The worst that can be said is that the Government had not yet got around to mailing out the notice of a necessarily preexisting decision.

The *European Trading* case, supra, involved a contention that an appeal from a single *judge's* decision on reappraisement was premature, rather than an appraiser's decision as here, but several comments made by this court in *reversing* the Customs Court holding that the appeal was premature are most appropriate to the present case:

It is well established that statutes giving the right of appeal are liberally construed in furtherance of justice. Lewis' Sutherland Statutory Construction, section 717.

    \*      \*      \*      \*      \*      \*      \*

The paragraph [501] also provides that an importer may appeal within thirty days after notice to him of the appraisement. Under the ruling before us, an importer could not appeal to reappraisement either before such notice was received or upon the same day that such notice was personally delivered to him \* \* \*.

    \*      \*      \*      \*      \*      \*      \*

It is our view that, in the various limitations with respect to appeals and applications for review, Congress did not intend that no action could be taken before the period of limitation had commenced, if in all other respects the same conditions existed before the commencement of such period as were present during the period of limitation.

That is the situation in the case at bar—the appraiser's *decision* had been made and *personally delivered* to appellant's agent within the express language of section 501, liberally construed, and the conditions were exactly the same then as throughout the thirty days following the *mailing* of the notice in writing, which notice the majority finds so significant.[2]

The *European Trading* case principles of construction seem to me to compel a reversal. My analysis of the lower court's opinion convinces me that after discussing a large number of irrelevant matters and making a number of assumptions about what section 501 pro-

---

[2] Of course the mailing of the notice can be very significant if the government fails to send it and then seeks to *deprive* the importer of some right. But since the notice is for the protection of the importer, it would seem that his right to receive it is a right he could waive. What would the contention of the government be where the agent, Snead, had been in the Customhouse on November 10, had been shown the notice and told that it would be mailed in the afternoon of that day, whereupon he decided to file the appeal to reappraisement in the morning? Would it be held "untimely" because filed *before* the mailing of the notice? That is the kind of technical legal nonsense this court would have none of in the *European Trading* case. The single judge herein got the message and said in his opinion:

    \* \* \* the court observed that a statute of limitations does not necessarily prevent action prior to the commencement of the period prescribed. As noted by the court, the purpose of a statute of limitations is to operate as a cutoff date beyond which all rights are fixed and determined \* \* \*.

But he got it only in part and then became involved in the question of when *court* decisions are "final." We do not have that issue here.

vides which are not compelled by any precedents, it makes an a priori, and hence unnecessary, decision that the appeal was premature. I am not impressed by the fact, if it be a fact, that the appraiser might have changed his mind. He did not. Even courts can change their decisions after they have been *entered*—and they do. But this does not require the losing party to delay his appeal until such change is no longer a possibility.

One reason we have a judiciary as part of our "government of laws" is historical recognition of the fact that legislatures, being human institutions composed of fallible men, cannot write perfect statutes and that what they do write is bound to require interpretation, construction, and application to unforeseen fact situations.

The supposedly "clear and readily understandable language" of section 501 happens to be open to two interpretations, one of which validates the appeal here taken and the other of which invalidates it. Our function as the judiciary, therefore, is not to declare that ambiguous language has only one meaning but to select that meaning which promotes justice and respect for our "government of laws."

The "law," in this instance, having been left somewhat at loose ends by Congress, is in our keeping. The dissenters do not suggest that power be assumed; it is imposed upon us and it is a sacred trust. We should not pretend we do not have it. The majority is exercising it to deny appellant his right to an appeal on the strange theory that that which is done too *soon* is to be treated as though it had not been done at all.

Procedurally, the appeal filed by appellant, albeit too early to have "legal" effect according to this decision, has practically sufficed to bring the case all the way to this court, though to no purpose. The prodigious efforts of 5 judges here and 3 below, not to mention the lawyers, would have been better expended in determining the correctness of the appraisement than in this sterile glorification of a senseless technicality.

A reversal in this case would not *dispense* with the written notice required by section 501, a notice which actually was given and, in any event, is not for the protection of the Government. It would open no floodgates to the entertaining of dilatory appeals. There certainly is no likelihood of a flood of *premature* appeals. Nor would it create any "administrative and legal chaos." It would merely permit one who asked for judicial review, more promptly than do most litigants, to have it (granting such review being the sole object of the statute) and make clear that this court does not approve a policy of construing ambiguous statutes, intended to *afford* a right of review, in such manner as to *deny* that right when asked for with utmost diligence. 3 Sutherland, Statutory Construction § 6807 (3d ed. 1943), states (footnotes omitted) :

Statutes giving the right of appeal are liberally construed in furtherance of justice, and an interpretation which will work a forfeiture of that right is not favored. Thus provisions limiting the time for bringing an appeal are liberally interpreted so that the party pursuing the remedy of appeal will not be defeated on mere technicalities. * * * Statutory requirements of notice, and the procedure of perfecting an appeal are given a liberal extension to make certain that the case will be considered on its merits by the appellate court.

Suppose we accept the reading of section 501 adopted by the government attorneys (though not by the government customs agents), accepted by the majority here, that the time for taking an appeal is a thirty day period beginning with the mailing of the notice of appraisement by the Government. The fact, which seems totally to have escaped the attention of the majority, is that on each and every day of that thirty day period appellant's appeal papers, in proper form, were "filed" in the proper Government office. The majority decision necessarily rests on the tenuous and meaningless distinction between the *act of filing* a paper and the fact of its being *on file*. The result is like excluding a ticket-holder from the ball park on the ground that he was standing in line when the gate opened. The words of the statute are: "filed * * * with the collector within thirty days * * *." The appeal *was filed* with the collector within thirty days by being *on file* with him during every one of the thirty days. No authority whatever is cited to support the limited construction which restricts the word "filed" to the initial *act* of placing on file. I submit that any paper is "filed * * * with the collector" at any time when he has that paper in his file and that the appeal here was so *filed* throughout the whole of the statutory appeal period.

While it is highly desirable that we should promote orderly procedure in the law, when a statute is so construed and applied as to penalize diligence, of all things, without benefiting anyone in the process, it behooves us to pause and consider what the purpose of law is.

SMITH, Judge, dissenting.

While I agree with the dissenting opinion written by Judge Rich, there are some additional observations which have influenced me in arriving at my present view concerning this case. Some six years ago, when I entered upon the duties of my present office, I noted for the first time the noble sentiment incised over the 10th Street facade of the Department of Justice:

JUSTICE IS THE GREAT INTEREST OF MAN ON EARTH. WHEREVER HER TEMPLE STANDS, THERE IS A FOUNDATION FOR SOCIAL SECURITY, GENERAL HAPPINESS AND THE IMPROVEMENT AND PROGRESS OF OUR RACE.

It was, therefore, with a sense of shock and disbelief that I read in the Government's brief that even if this were a case where equitable

relief were appropriate, "such relief is clearly beyond the power of this court to grant. *Jacksonville Paper Co., a Corporation* v. *United States, supra* at 165." What, indeed, has become of the noble concept of "justice" if we accept this position of the Government?

The pertinent facts are that appellant, believing the appraisement of certain imported merchandise was too high, filed a notice of appeal for reappraisement by a judge of the U.S. Customs Court. Thus far, it has been denied such reappraisement because it relied on the oral representation of the Assistant Collector of Customs that the appraisement had been made and completed at the values set forth in certain written "Notice[s] of Probable Unpaid Duties or Taxes." It acted upon this representation promptly—too promptly according to the Government's view—and filed the appeal for reappraisement which comes before us. After appellant's time had expired for the filing and perfection of what the Government would perhaps concede was a timely appeal, i.e., after receipt of a written notice, some nameless individual in the vast reaches of the governmental bureaucracy discovered that the appeal for reappraisement could be aborted by a motion to dismiss. As the matter reaches us, such a motion was filed, it was granted on the ground that the notice of appeal was premature, and the appeal was dismissed.

Apparently the Government's position rests on the basic premise that one may rely upon the word of an Assistant Collector of Customs only at his peril. It is this which disturbs and troubles me for its end result can only be to undermine a citizen's faith in his governmental officials and to deny him his right to rely upon their fairness in dealing with him.

Basically, the Government's position on this motion seems to me to require a double standard of fair dealing. There would be little doubt here, I think, if the transactions upon which appellant relied had been between private parties, that some sort of an estoppel or *nunc pro tunc* ratification of the underlying oral representations would have been applied to assure that appellant would not be unfairly deprived of its day in court, because it had relied in good faith upon the representations of another who stands to gain an unfair advantage by repudiation of such representations. Here, however, it seems to me the Government is saying in effect that a different rule should apply when such representations are made by a governmental official. I do not agree that this should be the case.

The situation on the present record is that appellant had relied in good faith upon the representations made by a governmental official in the course of his duties and within the ambit of his authority, and then in good faith took the action believed necessary to perfect the appeal for reappraisement. These events admittedly occurred a few days before the time the Government concedes would have been the

proper date on which to take the appeal. For this reason the Government has thus far prevailed and appellant finds itself out of court without having had a hearing on the merits of the appeal. What has the Government gained by this? It has gained at best a Pyrrhic victory. It has not had to appear in court and support the values found by its appraiser. But this victory has been won at the cost of the respect of every decent and thinking citizen who at some time or another is bound to meet his elected or appointed official in some such capacity and who may wish to rely upon what he has been told by such official. I am unwilling to be party to any opinion which sanctions such a course of conduct.

There is yet another lesson to be learned here. At base the problem arises from an unfortunate wording of the statute by which it appears to mean different things to different governmental officials. How, if the Government's position is correct, can any citizen accept the word of any governmental official concerning the meaning of such a statute? The statute is so worded that both appellant and the Government by the simple expedient of emphasizing different portions of the same sentence can find support for their opposed positions. Section 501 of the Tariff Act of 1930 reads:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

Appellant emphasizes the words "within thirty days after the date of personal delivery," while the Government finds support for its position by emphasizing the portion "written notice of appraisement."

There is no question as to how the officials initially concerned with this transaction interpreted the section. Edward C. Snead, who became a customhouse broker after some 32 years of service in various capacities in the Customs Service, including the positions of Assistant Collector of Customs of both Wilmington, N.C. and Charleston, S.C., as well as having been an administrative officer with the Bureau of Customs, filed an affidavit in this case and testified as a witness. Mr. Snead after reciting the facts of his conversation with the Assistant Collector of Customs stated that he considered that this conversation

amounted to a "personal delivery" of the notice of appraisement referred to in the section of the statute above quoted. He is supported in this position by the personal opinion set forth in a letter from James E. Townsend, the Assistant Collector of Customs, that:

* * * the conversations which took place between customs personnel and Mr. Snead on or about November 2, 1960, concerning the appraisement of the above mentioned entries did constitute personal delivery of notice of appraisement as contemplated under section 501 of the Tariff Act.

There is nothing of record on which to challenge the statements of these two men. It seems to me that we should rely upon the understanding of such men as to what transpired and as to what its practical effect was rather than rely upon what is at best a technical construction of the statute, giving it an effect quite different from what those actually in the field apparently understood it to mean. Where a statute is so vaguely worded that it is subject to such diverse interpretations, it seems to me that we should give great weight to the actual practice which, in this case at least, had placed a particular interpretation upon it; i.e., that the notice of appraisement could be given either personally, as in this case, or it could be given by mailed written notice. Whether or not this is a proper interpretation, the fact is that the events which transpired affirmed all that the importer's agent had been told; namely, that the written notices of probable unpaid duties or taxes were supported by the appraisement, that the appraisement was made, and that written notices of the appraisement were sent to appellant.

In such a situation it seems to me that we should apply rules of common sense to the entire transaction and treat it as we would treat a similar transaction between private parties. Otherwise, the net effect of the Government's position is that it may profit, without accountability in court, by the simple expedient of repudiating the representations made by its own officer acting within the ambit of his official duty. I think an importer should be entitled to rely upon these statements in good faith and in view of the ambiguous wording of the statute should be permitted to take the action which was here taken. To the extent an appeal might find the appraisement to assess values which are too high, the Government has been unjustly enriched by its change of position. Such conduct would not be sanctioned if it were the act of a private citizen. The fact that it here has the sanction of the Department of Justice does not justify the result reached by the majority.

I would, therefore, find that the notice of appraisement given orally on November 2, 1960 was ratified *nunc pro tunc* by the appraiser's report of November 10, 1960 and the written notices mailed to the importer at that time. I give little weight to the Government's position that appellant could have perfected an appeal after receipt of the

written notice. It had taken the appeal in good faith and in reliance upon the oral notice of appraisement which was thus ratified. Why should the importer be required to do again what it already had done in good faith reliance upon the representation of the Assistant Collector of Customs? I would *reverse*.